## CHAMBLEE VS. McKENZIE.

1. TORT: *When it may be waived and suit maintained on implied contract.*
   Where a party whose goods have been wrongfully converted elects to waive the tort and sue in assumpsit for money had and received, he must show that the goods have been disposed of by the wrong-doer for value.

2. LEGAL PRESUMPTIONS.
   The law will not presume that cotton shipped to market is immediately sold.

3. BAILMENT: *Right of action in bailee.*
   A landlord to whom a tenant delivers cotton as security for the payment of rent acquires a right to the possession, and may maintain an action for the disturbance thereof.

4. PLEADING: *What allegations do not require strict proof.*
   Allegations of quantity, quality and value, when not descriptive of the subject of the action, need not be proved as alleged.

5. SALE: *When completed.*
   The rule that title to goods does not pass so long as anything remains to be done to ascertain the quantity and price of the article sold, does not apply where there is a delivery with the intention of passing the title.

6. ACTION, RIGHT OF: *Where promise to one for benefit of another.*
   A party for whose benefit a promise is made to another may maintain an action thereon.

7. ————: *Variance between pleading and proof. Amendments, etc.*
   This court will not disturb a verdict on account of a variance between the pleading and evidence, where the pleading might have been amended at the trial, in accordance with the proof.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Thos. B. Martin,* for appellant.

HARRISON, J.:

Hanf. J. McKenzie sued J. W. Chamblee before a justice of the peace on the following statement or account:

"The plaintiff, Hanf. J. McKenzie, states that the defendant, J. W. Chamblee, is indebted to him in the sum of $304 for five bales of cotton, which was turned over to him by Z. T. Bunch to pay his rent, and on which the said plaintiff had a lien as

landlord.    Said cotton was taken by said defendant, J. W. Chamblee, and sold by him without the consent of said plaintiff, and the proceeds thereof appropriated to his own use."

The suit was commenced on the 7th day of February, 1874.

The plaintiff recovered judgment before the justice for the sum claimed, and the defendant took an appeal to the Circuit Court.    Upon the trial in the Circuit Court the jury returned a verdict in favor of the plaintiff for $250.    The defendant filed a motion for a new trial, which was overruled, and he then appealed to this court.

The grounds of the motion for a new trial were—

*First*—That the court gave improper instructions to the jury for the plaintiff.

*Second*—That it refused to give them proper instructions asked by the defendant; and,

*Third*—That the verdict was against the evidence.

The evidence was, in substance, as follows:

For the plaintiff—

The plaintiff testified:    That he rented Bunch 30.4 acres of land in his plantation for the year 1873 at $10 per acre.    About the last of January or first of February, 1874, he spoke to Bunch about paying the rent, and Bunch told him to take the cotton and pay himself.    The cotton was then in pens on the demised land, two or three hundred yards from plaintiff's house, where the conversation took place.    A few days after this conversation the cotton was taken by persons employed by the defendant, and hauled to the gin on the Lewis plantation, near Greenback, where the defendant was doing business, where it was ginned and baled, and then shipped by the defendant.    It was shipped on a steamboat going up the river toward Pine Bluff, which is a good cotton market.    He had a lien on the cotton for the rent of the land, and had so informed the defendant before the cotton was taken, and

he told him it could not be moved until the rent was paid. The cotton was worth $304, and he had demanded of the defendant either the cotton or its value.

Z. T. Bunch testified: That he, about the first of February, 1874, turned the cotton over to the plaintiff to pay himself the rent out of. It was turned over by his saying to the plaintiff, who had spoken to him about paying the rent, and expressed some apprehension that the witness was not going to pay him: "There is the cotton, take it," and which was all that passed between them.

The witness had before then sold the cotton to the defendant to pay a debt, for which he had given him a mortgage on the cotton; but after the sale the defendant told him he had seen the plaintiff, and he refused to allow the cotton to be moved unless the rent was paid, and said he would attach it if he attempted to move it; and the defendant said that he would not move it and have it attached by plaintiff. After he turned the cotton over to the plaintiff he again saw the defendant, and he told him he could send and get it, but said to him he would have to pay the plaintiff his rent. The defendant after that sent wagons and hauled the cotton to the gin, and after it was ginned he told the defendant he might ship it, but must pay the rent. Witness supposed that, after paying the rent, there would be $150 over.

For the defendant—

The defendant testified: That he bought the cotton as it was in the pens from Bunch, in January, 1874, in payment of a debt for supplies he had furnished him in 1873, and for which he had given him a mortgage on the cotton, and was to send wagons and get it. He afterwards saw the plaintiff, and told him he had bought it. The plaintiff said it should not be moved until his rent was paid, and if it was he would attach it. He said to plaintiff he supposed the rent had been settled or he would not have bought it, and that if he had a claim on it for rent he would

not attempt to move it until it was paid. ·A few days afterwards Bunch told him that he had seen plaintiff; that it was all right, and he could send and get the cotton. He employed and sent. hands after the cotton and had it hauled to the gin. It was hauled to the gin on Monday and Tuesday; on Thursday it was ginned and baled, and, on the next Monday, he shipped it to New Orleans by the way of Pine Bluff. He sent it that way to keep the plaintiff from attaching it. The plaintiff was at defendant's store on Saturday before the cotton was shipped, when he laughingly said to him: "Do you know that I have shipped that cotton?" He said, "No, I know you have not." He then said to him, "I am going to ship it; you had better watch it." The plaintiff replied, "I am watching it."

Lewis Kennady testified, and was corroborated by Liberty Kennady, that he and the said Liberty Kennady were employed by the defendant to haul the cotton to the gin; and that when they went to the plaintiff's place for it, they saw the plaintiff, and he asked them if they had come after the cotton, and when they told him they had, he told them to go on; that Bunch was in the field and would show it to them.

The first instruction given at the request of the plaintiff, which was objected to by the defendant, was as follows:

"If the cotton was turned over by Bunch to the plaintiff, out of which to pay his rent, he had a special property therein; and if moved by the defendant without his consent he became liable to the plaintiff for its value."

As an abstract proposition this instruction is correct, and would be applicable in a suit for the *tort*, or wrongful taking of the cotton, but this suit is upon a contract, and for the failure to pay money received to the plaintiff's use.

Where goods have been taken *tortiously*, and sold by the wrongdoer, or he has, in any manner, received the value thereof, so as

to be chargeable as for money received to the use of the owner, the owner may elect to waive the tort and affirm such sale or disposition, and maintain an action for the money so received; but if there has been no such sale, or disposition, from which a promise to pay may be implied; there can be no contract, for the breach of which an action may be maintained. *Bowman* v. *Browning*, 17 Ark., 599, and cases there cited; 2 Green. on Ev., sec. 108.

Therefore, considered alone, we should hold this instruction bad, as being irrelevant, but calculated to mislead the jury, yet, as the defendant has, by his bill of exceptions, brought upon the record not only the instructions given for the plaintiff which were objected to by him, and those proposed by him and refused by the court, but those also given at his instance, one of which is as follows:

"For the plaintiff to maintain his action, it must appear by the evidence that the defendant received money to which plaintiff is entitled, or something as, or instead of money, or which had been converted into money before the commencement of the suit."

This latter instruction corrected the former, and removed the impression it might have made upon the minds of the jury to the prejudice of the defendant, and the two taken together formed a proposition of law applicable to the case.

The next instruction given for plaintiff was:

"If the cotton was turned over by Bunch to the plaintiff to pay rent, and Bunch subsequently contracted to sell said cotton to the defendant, the plaintiff's right was not affected by such subsequent contract."

This instruction was, most clearly, unobjectionable.

The remaining instruction objected to was as follows:

"If the jury believe from the evidence that a sufficient time had elapsed from the taking of the cotton to the bringing of the suit for the defendant, with reasonable diligence, to have sold the cotton, the law presumes he had done so, and it is not necessary that the plaintiff should actually prove that the proceeds or money therefor had been received by him."

Presumptions of law " are the result," says Greenleaf, "of the general experience of a connection between certain facts or things, the one being usually found to be the companion or the effect of the other." 1 Green. Ev., sec. 33. They are of two classes—the conclusive and the disputable. The first admits of no evidence to the contrary, but, in the second class, "the connection," he says, " is not so intimate, nor so universal, as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all evidence to the contrary being rejected; but yet it is so general, and so nearly universal, that the law itself, without the aid of a jury, infers the one fact from the proved existence of the other, in the absence of all opposing evidence." Ib. Of such presumptions, are, that of innocence in the case of a person accused of crime; that a note in the hands of the maker has been paid; and that a relation, once shown to exist, continues.

There is no such general experience, that cotton shipped to market is immediately sold; but, on the contrary, it is common knowledge that it is not unfrequently withheld from sale long after it has reached there.

If the jury had been told that such lapse of time was a circumstance that might be considered with other facts in the case, when determining whether the cotton had been sold or not, no fault could be found with the instruction; but it was an error to assume a sale as a conclusion of law from such circumstances.

The first of the instructions asked by the defendant and refused by the court was as follows:

Chamblee vs. McKenzie.

"If the cotton was turned over to the plaintiff as a security for the rent, and not with the intention of passing an absolute title thereto, he had no such property in the cotton as would entitle him to maintain this action."

This instruction was properly refused. If the cotton was turned over to McKenzie in trust to pay himself the rent, he had a clear right to the possession of it. A bailee, or person having only a qualified property in goods, may maintain an action in regard to them.

The second was:

"The complaint, in this action, alleges that the defendant had taken and sold five bales of cotton belonging to the plaintiff; it is, therefore, incumbent upon the plaintiff to prove such allegations as stated."

As a general thing, allegations of quantity, quality and value, when not descriptive of the identity of the subject of the action, are not required to be proved strictly as alleged. 1 Green. on Ev., sec. 61. The court correctly refused to give the instruction.

The remaining one was as follows:

"When something remains to be done between the buyer and seller of personal property for the purpose of ascertaining either the quantity, or the price of the article, there is no such delivery as passes the title; and it is not necessary to show that an express agreement was made that something further should be done between the parties. It is enough if it appears from the circumstances of the case, to be necessary; and if the jury believe, from the evidence in this case, that Bunch intended to turn the cotton over to the plaintiff, and that there was neither a weighing, so as to ascertain the amount, at the time nor afterwards, and that no specific price was paid, they will find for the defendant."

*Vol. xxxi.—11.*

When the cotton was turned over to McKenzie, as Bunch swears, it was on McKenzie's land, which he had rented from him the year before. His assent to Bunch's offer was, therefore, all that was necessary to transfer the possession to him.

This instruction assumes that, though there be a delivery, if anything remains to be done to ascertain either the quantity or the price, the property in the goods does not pass to the purchaser. Such is not the law. The rule is, that if anything remains to be done on the part of the seller, as between him and the buyer, before the commodity purchased is to be delivered, the right of property has not passed to the buyer. But if it clearly appear to have been the intention of the parties that the property should be deemed to be delivered, and the title to have been passed, the mere fact that something remains to be done will not govern such intention. Story on Sales, sec. 296–298*a*.

The demand, as made by the account or statement filed, is for money received to the use of the plaintiff on the sale of the cotton, and evidence was adduced in proof of it; but there was evidence also tending to prove a promise by the defendant to Bunch to pay McKenzie the rent, by which he became liable to him for it; for it is a general principle that the party for whose sole benefit the promise was made, may sue thereon in his own name, although the engagement be not directly to or with him. 1 Chit. Plead., 4; *Strobecker* v. *Grant*, 16 Serg. & Rawl., 237; *Potter* v. *Yale College*, 8 Conn., 52; 2 Green. on Ev., 109.

Although no such demand was made in the account or statement, yet, as under our practice, it might have been amended at the trial in accordance with the proof, we would not disturb the verdict but for the erroneous instructions given. As it is not possible for us to know whether the verdict was for the price of the cotton, or for the debt assumed for Bunch, the judgment must be reversed and the cause remanded that a new trial may be had.