## SMITH v. JONES.

### Opinion delivered November 28, 1896.

FRAUD—RETENTION OF POSSESSION BY VENDOR.—A sale of chattels is not rendered fraudulent as to creditors of the vendor by the fact that the vendor is permitted to remain in possession after the sale as lessee of the property sold.

SALE—SUFFICIENCY OF DELIVERY.—Proof that the vendors of a large quantity of lumber directed the vendees to mark it in their name, which was accordingly done, is sufficient to support a finding that there was a delivery of the lumber in pursuance of the sale.

SAME—DELIVERY—SEPARATION OF PROPERTY.—Where a quantity of lumber is sold to two persons separately, and they on the same day form a partnership for the purpose of handling it, a delivery of the whole quantity to the two is sufficient, without making a separation of the part purchased by each.

SAME—CONFLICT OF LAWS.—The rule that an assignment made in one state of property situated in another state is invalid as to creditors residing in the latter state does not apply in the case of an absolute sale of the property.

Appeal from Craighead Circuit Court, Jonesboro District.

JAMES E. RIDDICK, Judge.

STATEMENT BY THE COURT.

This case was affirmed orally some time ago, the affirmance was set aside, and it now comes before us again on a motion for rehearing.

Jones & McPherson Bros. was a firm composed of H. V. Jones, who resided in St. Louis, Mo., and kept the firm's office there, and J. J. McPherson and W. G. McPherson, who manage the firm's business at Gates, Tennessee, and in and near Earle in Cross county, Arkansas, and were brothers. The co-partnership was engaged in the saw mill business, mainly in Arkansas, so far as the record shows. There was another firm, styled McPherson Bros., composed of J. J. McPherson and R. T. McPherson, and doing a milling business at Gates, Tennessee, and had their office there in the same room as did Jones & McPherson Brothers. All the McPhersons named in the record were brothers, and J. J. McPherson was brother-in-law to T. F. Lee, hereinafter referred to.

On the 28th of June, 1893, Smith, Graham & Jones, a firm of merchants at Wynne, Ark., brought suit in attachment against Jones and McPherson Bros., and on 8th of July, 1893, attached their saw-mill, about 200,000 feet of sawed lumber, and all the saw-logs about the mill in Cross county, the grounds of attachment being "that the defendants, Jones & McPherson Bros., are about to remove a material part of their property out of the state, with the effect of hindering and delaying their (defendants') creditors in the collection of their debts."

On the 11th of July, 1893, the Cross County Bank also brought its suit in attachment against defendants, and attached, on the 16th of August, 1893, the said mill, sixty-five stacks and parts of stacks of poplar lumber, and 218 poplar logs; and the grounds of attachment

were "that said defendants have sold, conveyed, or otherwise disposed of their property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder and defraud their creditors, or to hinder or delay them in the collection of their debts"; "that said defendants are not residents of the state of Arkansas."

No defense was made by any of the defendants, nor was there a countervailing affidavit in either of the suits.

The saw-logs were partly sawed into lumber after the levy of the attachment by order of the court, and all the lumber was sold by order of the court in vacation.

On the first day of November, 1893, Lee & Co., by T. F. Lee, one of that firm, filed their interplea for the property attached (which was substantially the same in both suits and in the interplea), claiming to be the owner thereof by purchase of the same from the defendants. It is in testimony that J. J. McPherson, one of the defendants, and acting for them, sold the mill to T. F. Lee on the 27th of February, 1893, for $1,300, and on the 21st of June, 1893, 150,000 feet of the lumber to T. F. Lee and 100,000 feet, which was all on the yard, to R. T. McPherson, and the logs, also, to them, and they two, on that day, formed a partnership to continue the milling and lumber business at the same place. These sales and this organization of partnership were effected at Gates, in the State of Tennessee, when all the parties to the cause were there. The consideration paid for the mill and lumber was the satisfaction of pre-existing debts owing to Lee and R. T. McPherson by Jones & McPherson Bros. It is in testimony that Lee, at the time of his purchase of the mill, wrote from Tennessee to the foreman in charge of the mill near Earle, in Cross county, Arkansas, to the effect that he had an interest in the mill, and requested him to keep the exact number of days that the mill was run from that time on for him. This message seems to .

have been based upon what appears in evidence to the effect that the defendants were to retain the mill a time after the sale for the purpose of sawing up all the logs they had .cut, and they were to pay rent at the rate of four dollars each day the mill was actually operated, and to make repairs to the amount of twenty-five dollars. It appears in evidence, also, that R. T. McPherson went from Gates to Earle to look after and take possession of the mill and lumber early in July, 1893, and was advised by J. J. McPherson, whom he found at Wynne, Arkansas, to go and mark the lumber, which he did on the 5th of July, 1893, in the name of "Lee & Company" the name of the new-formed firm. It also appears that all of the Mc-Phersons had always resided at Gates, Tennessee.

*J. C. Hawthorne* and *N. W. Norton* for appellants.

No sale is complete while the vendors retain an interest in the property. There must be delivery, constructive or actual. 54 Ark. 308; 47 *id*. 210; 31 *id*. 136. A retention of possession is *prima facie* evidence of fraud, and the proof does not overcome the presumption. 50 Ark. 289. A non-resident firm's property in this state, especially when insolvent, should be held to pay creditors of this state. 36 Cent. Law Journal, 312; 128 Ill. 222; 108 *id*. 385; 29 N. E. Rep. 209; 35 Ill. App. 155; Story, Conf. Laws (5 Ed.), sec. 388; *ib*. sec. 414.

*E. F. Brown* and *N. F. Lamb* for appellees.

Actual delivery is not necessary in any case as against creditors, not even of articles present at the time and place of sale. 7 Ark. 269; 18 *id*. 123; 31 *id*. 131; 35 *id*. 304; 44 *id*. 301; 50 *id*. 289; 54 *id*. 308; 5 Caldwell (Tenn.), 476. See also 44 Mo. 238; 54 Pa. 514.

BUNN, C. J., (after stating the facts.) This cause was considered by this court, and the judgment was affirmed orally. The affirmance was subsequently set aside for the purpose of considering a motion for a new

hearing, the term being about to expire. The motion for rehearing assigns two grounds upon which the affirmance aforesaid should be set aside and the judgment reversed. The first is because the transaction involving the sale from Jones & McPherson Bros., the defendants herein, to T. F. Lee and R. T. McPherson, the interpleaders, was in fact fraudulent as to the plaintiffs, Smith, Graham & Jones, and the other creditors of the defendants. The second proposition is that there is in fact no evidence of the completion of the sale, and especially because there was no delivery in law.

First then, as to the fraudulent character of the sale. There is evidence to the effect that the defendants were honestly owing Lee and R. T. McPherson debts equal to, and even in excess of, the prices they respectively paid for the portion of property they purchased of defendants; and the price paid in each instance seems to have been reasonable, and the consideration seems to have been by agreement paid by these debts. These things being true, unless there is some other circumstance going to show fraud (and there does not appear to be such), we are not at liberty to set aside the finding and judgment of the lower court, as to the *bona fides* of the sale.

It must be kept in mind that plaintiffs cannot be held as innocent purchasers for value and without notice.

When vendor's possession not fraudulent.

A question, however, that affects or may affect the character of the sale arises upon the facts stated in connection with the sale of the mill in February, 1893, to Lee. In that connection it is contended by appellants that, in making that particular sale, defendants in fact reserved to themselves some interest in the mill property. If that be true, the sale was fraudulent as to creditors, as contended. Interveners Lee and R. T. McPherson (the appellees) contend, on the other hand,

that in the contract of sale of the mill no interest whatever in the property was reserved by defendants, the vendors, but that, as a part of the transaction, in which the sale was the principal part, it was also agreed by and between the parties to it that the vendees would rent the mill to the vendors for a time sufficient to enable them to saw up the logs then on the yard, at the rate of four dollars a day, and the latter to make repairs not to exceed the value of twenty five dollars.

The law on this subject is as announced in *Valley Distilling Co.* v. *Atkins*, 50 Ark. 289, where, in speaking of a retention of possession of personal property by the vendor, this court said: "It is *prima facie* evidence of a secret trust, which is fraudulent as to creditors, and, if unexplained, the presumption becomes conclusive." It is in evidence that defendants remained in possession after the sale by them, not as vendors, but as renters. If this be true, it is a sufficient explanation, or may be so considered, of the possession, and this was a question for the jury.

The rule of law as laid down by Judge Story in *Barrett* v. *Goddard*, 3 Mason, 114, is : "The principle is sound that a continuance of the possession of the vendor does not prevent the delivery being complete, if nothing further remains to be done on either side, and the possession is by mutual consent. There is nothing in reason or principle to make the present case different simply because the bales of cotton remained in the plaintiff's warehouse. It was part of the bargain that they should so remain, and a part of the consideration of the promise." That case is cited with approval in *Hotchkiss* v. *Hunt*, 49 Me. 221, wherein are also cited with approval in Pothier on Sales (Cushing), 203, and *Holly* v. *Huggeford*, 8 Pick. 73. The case of *Lynch* v. *Daggett*, recently decided by this court, and reported in 62 Ark. 592, involves this principle, although the purpose of the

retention of possession by the vendor in that case was different from that in the case at bar.

As to the question of delivery, Mr. Benjamin in his work on Sales (6 Ed.), page 678, *et seq.*, makes this statement: "It has already been shown that non-delivery is, in some states, a conclusive, and in others a presumptive, badge of fraud, enabling creditors of the vendor to disregard the sale and seize the property as if a sale had never been made. Some maintain that delivery is not essential, even as against creditors and subsequent purchasers, except as non-delivery may be a badge of fraud; and if no fraud be alleged, or non-delivery be satisfactorily explained, that a sale without delivery is as valid against third persons as against the vendor himself."

Sufficiency of delivery. There is a charge of fraud in this case, but on the other hand the non-delivery (if there was such) is sought to be explained by the facts and the testimony in the case. The sale was made at a distance, and the articles constituting the subject-matter of the sale were bulky and incapable of manual or actual delivery, and the purchasers both did certain acts looking to a taking of possession, which were or were not reasonably timely, accordingly as the jury, under the instructions of the court, might find from the evidence. This subject is elaborately and ably discussed in *Meade* v. *Smith*, 16 Conn. 346, by Judge Story in delivering the opinion of the court, wherein he shows that the rule under the civil law and that under the common law are different on the subject.

Necessity of separation of property sold. The contention that there was no segregation of the lumber purchased by Lee, or of that purchased by R. T. McPherson, from the bulk on the yard, and that for that reason there was no complete sale of the lumber, we think is not sustained. The evidence shows that on the very day of the sale these two purchasers

formed a partnership to carry on the mill and lumber
business, and enough is shown to conclude that this
lumber was to constitute a part of the partnership's
stock in trade. It would have been a needless and very
expensive formality to have separated the lumber, allot-
ting each his share under the circumstances, when it
would have been thrown together again for the purpose
of their business. Ordinarily, separation is an element
of the sale, but when separation can serve no useful
purpose to the parties, but on the contrary will entail
great expense, we think a delivery of the whole to the
two, who have in the meantime become the owners in
common, when done in a reasonable time, is sufficient.

It is contended that nothing is said about the logs.
It is true that the evidence is meagre on that subject.
Enough was given however to lead us to conclude that
they are to be placed in the same category as the lum-
ber; that each of the partners gave $250 for his half of
the logs, and that possession was taken as in case of the
lumber.

It is contended by appellants that, by analogy to
the case of a foreign assignment, this sale of defend-
ants to interpleaders, made in Tennessee, of property
in this state ought not to stand as against creditors
residing in this state, such as are the plaintiffs. Some
courts have applied the rule of administration to cases
of assignment, because of the real or supposed analogy
between them. Whatever analogy there may be between
proceedings under the administration laws and those
under the assignment laws, there is none between the
latter and the proceedings to enforce ordinary contracts
of sale, in so far as the interest of foreign and domestic
creditors may be involved. To sustain their contention,
appellants' counsel cite us to the case of *Barnett* v. *Kin-
ney*, 36 Cent. Law Journal, 310–12, where there is a very
full discussion of the subject, and in the course of which

*Conflict of laws as to sales.*

are cited *Woodward* v. *Brooks*, 128 Ill. 222, and *Heyer* v. *Alexander*, 108 Ill. 385.

A careful examination of the discussion in case of *Barnett* v. *King*, and especially of the elaborate editorial note thereto, leads us readily to see the distinction between the two classes of proceedings to which the rule contended for does, and does not, apply, if we were disposed to apply it in either case. The contracts of ordinary sale are very much the same in all jurisdictions, and there is no peculiarity in cases arising thereon to give a preference of a citizen of one state over one in another state, as is claimed to be in assignments and as in administrations.

Complaint is made that the instructions of the court were so numerous and minute as to confuse the jury. Whatever may have been the reason or motive in the mind of the trial judge for giving instructions in full, he had a sound discretion in the matter, and it would not be safe for us to attempt to control that discretion except in the most extreme cases, for the circumstances which controlled him are unknown to us. The close contests of counsel, and their accurate and technical learning and legal acumen, very often make it necessary to touch upon many minute points in instructions, which would not be noticed, where there is more of carelessness in the management of a case.

Every phase of the case, and every point at issue, were presented in a lucid and direct manner, and we do not see how the jury could have misconstrued the meaning of the court in any particular; and to reach this standard is at last the whole duty of trial courts, after all is said. This case is one of facts mostly, and the jury's verdict has determined them, and we see no ground for reversal, whatever may be the suspicions that arise out of the facts, or whatever doubt we may have as to what the findings of facts should have been.

Affirmed.