## McDERMOTT *v.* KIMBALL LUMBER COMPANY.

### Opinion delivered February 12, 1912.

1. SALES OF CHATTELS—WHEN TITLE PASSES.—Title to chattels sold passes where such is the intention of the seller and buyer, though something remains to be done, as, for example, the fixing of the quantity or amount of the property or the payment of the purchase money. (Page 348.)

2.  SAME—SUFFICIENCY OF DELIVERY.— Where property is of such a nature
    and so situated that actual delivery can be made, that is necessary;
    but where the property is too ponderous and bulky for an actual change
    of its possession, a symbolical or constructive delivery, as by placing on
    it outward indicia of a change of possession and ownership, will be as
    effective as an actual delivery.   (Page 349.)

3.  SAME—SUFFICIENCY OF DELIVERY.—Where a pile of lumber was de-
    livered in pursuance of a contract of sale, and was tagged in the ven-
    dee's name, and part of the purchase money paid, the title passed
    though it was thereafter to be hauled to another place and there meas-
    ured and the balance of the purchase money, to be determined by such
    measurement, was then to be paid.  (Page 350.)

Appeal from Ashley Circuit Court; *H. W. Wells*, Judge; affirmed.

*James C. Norman*, for appellant.

1.   This case is ruled by 72 Ark. 141.   Title does not pass while anything remains to be done to ascertain the quantity or price.   Newmark on Sales, ch. 10, § 115; *Ib.* § 227; *Ib.* § § 9, 70, 294-5, 305; 89 S. W. 474; 28 Ky. Law Rep. 444, 657; 89 S. W. 648, 1130.

2.   There is error in the court's charge.

*George & Butler*, for appellee.

1.   Whether a contract is executed or executory depends solely on the intention of the parties.   35 Cyc. 277.   This question is settled by the verdict.   72 Ark. 141 is not in point, but 68 Ark. 307, is.   A sale may be complete where such is the intention, although something remains to be done subsequently as part of the consideration.   62 Ark. 592; 68 *Id.* 307; 37 *Id.* 483; 35 Cyc. 305-6, 322.

2.   Instructions are not set out in the abstract.   95 Ark. 108; 95 *Id.* 123; 93 *Id.* 87.

FRAUENTHAL, J.   This is an action of replevin instituted by E. O. McDermott to recover a certain lot of lumber, said to be about 22,000 feet.   It was instituted against J. M. and W. H. Cox and the Kimball Lumber Company, and the latter defendant alone made defense.   The lumber was manufactured by said J. M. Cox, who owned and operated a sawmill situated about one mile from Cypress, a railroad station.   It appears that said Cox was operating his sawmill in December, 1909, at Wilmot, and then traded with plaintiff, who was conducting

a mercantile business at that place. He continued doing bus-iness with plaintiff and became indebted to him, and this indebtedness continued until in April or May, 1910, when it amounted to between eight and nine hundred dollars. In January, 1910, the manager of the Kimball Lumber Company wrote to said Cox that if he would move his plant to land owned by it near Cypress it would buy the lumber manufactured by him; that it would advance thereon $10 per thousand feet when the lumber was on the sticks at the mill, and would pay therefor when loaded on the cars at said railroad station certain named prices for specified grades of the lumber, ranging from $10 per thousand for No. 1 common to $28 per thousand for firsts and seconds. And it appears that said Cox accepted this proposition and proceeded to move the mill to a point near Cypress.

On March 5, 1910, when the mill plant was about half completed, Cox obtained from the Kimball Lumber Company $400, and gave a receipt therefor in which it was stated that he agreed to deliver lumber therefor in accordance with the terms of the above letter during the months of March and April, 1910, or for a period of sixty days thereafter, in event that that time was needed to make such delivery. Of this sum, Cox paid to plaintiff $175 on the indebtedness due by him, and informed him of the correspondence and agreement he had made with the Kimball Lumber Company for the sale of his lumber. On April 1, 1910, Cox began sawing lumber, and in the latter part of that month notified the Kimball Lumber Company to send its agent to estimate the amount of lumber then stacked at the mill. In pursuance of this request, the Kimball Lumber Company sent its agent, who on April 29, 1910, estimated the lumber then on the yard. At that time the lumber was stacked in piles at the mill, and this agent estimated the amount in each pile, and then placed upon each pile the amount so estimated by him, and also tagged or marked each pile with the name of the Kimball Lumber Company. This agent and said J. M. Cox, and his son and manager, W. H. Cox, testified that said J. M. Cox then sold and delivered the lumber to the Kimball Lumber Company, and that it was understood by the parties that the lumber was then the property of the Kimball Lumber Company. They testified that they estimated the lumber at 22,000 feet;

that, according to the contract, Mr. Cox was to receive $10 per thousand on such estimate, but had already received $400 thereon, which was more than the estimate entitled him to; that the remainder of the purchase money for said lumber was to be paid after it had been hauled to the railroad station and there graded and measured and placed on board the cars. The testimony on the part of the defendant tended further to prove that the Kimball Lumber Company directed and employed said Cox to move this lumber to the railroad station, which he did in the early part of June. Thereafter the plaintiff instituted this action and replevied the lumber.

It appears from the testimony in behalf of plaintiff that on May 2, 1910, said J. M. Cox was indebted to him in the sum of $860.80, and that they then entered into a written contract whereby, amongst other things, it was provided that said Cox did release and sell to said plaintiff "all the lumber stacked in the yards of the mill at Cypress or near that place, with the exception of the lumber taken up and sold to the Kimball Lumber Company." On May 28, 1910, Cox gave to plaintiff an order upon the Kimball Lumber Company for $424 which said company refused to honor or pay. Thereupon, and on June 1, 1910, in consideration of $424 due by him to the plaintiff, said Cox executed a bill of sale to the plaintiff in which it was stated that he did sell and deliver to him "the lumber (22,000 feet) that was inspected by the Kimball Lumber Company, they having refused to pay my roder in favor of Doctor McDermott;" and it is under this bill of sale that plaintiff claims title to the lumber.

The case was tried by a jury, which returned a verdict in favor of the Kimball Lumber Company for the lumber, and placed its value at $400. From the judgment entered upon this verdict both parties have appealed. Plaintiff has appealed for the purpose of reversing the judgment chiefly upon the ground that there was no delivery of the lumber to the Kimball Lumber Company, so as to complete the alleged sale thereof to it. The Kimball Lumber Company has appealed on the ground that the uncontroverted testimony shows that the value of the lumber was largely in excess of $400.

The court gave a number of instructions, both at the request of the plaintiff and of the defendant, relative to the

question as to whether or not the alleged sale of the lumber to the Kimball Lumber Company was completed and the title passed to it. We do not think that it would serve any u eful purpose to set these instructions out or to note them in detail. We are of the opinion that the court committed no prejudicial error in its rulings relative to the instructions given or refused, and that those given sufficiently presented to the jury the law applicable to this case. The question then to determine is whether or not there is sufficient evidence to sustain the finding of the jury that the alleged sale of the lumber to the Kimball Lumber Company was consummated by sufficient delivery thereof.

It is urged by counsel for plaintiff that a sale is not complete as long as anything remains to be done between the buyer and seller in relation to the goods, and that for this reason the alleged sale to the defendant under the evidence was not complete. If there was a sufficient delivery of the lumber to the defendant, then, under the testimony, the only thing that remained to be done between him and the seller, J. M. Cox, was for defendant to pay the remainder of the purchase money for the lumber after grading and measuring it. In the caಿe of *Beller* v. *Black*, 19 Ark. 573, it was said: "The purchase money may remain to be paid, and yet the purchase be complete if the goods are delivered." It has been uniformly held by this court that the title to personal property will pass and the sale be complete if it is the intention of the parties to transfer the title on the one part and to accept the property on the other, and in pursuance thereof a delivery is made, even though something remains to be done, as, for example, the fixing of the quantity or amount of the property or the payment of the purchase money. *Chamblee* v. *McKenzie*, 31 Ark. 155; *Gans* v. *Holland*, 37 Ark. 483; *Shaul* v. *Harrington*, 54 Ark. 305; *Priest* v. *Hodges*, 90 Ark. 131; *Guion Merc. Co.* v. *Campbell*, 91 Ark. 240.

Thus, in the case of *Lynch* v. *Daggett*, 62 Ark. 592, it was held that a contract of sale was complete, although the property was thereafter to be moved by the seller to the place named. In the case of *Anderson Tully Co.* v. *Rozell*, 68 Ark. 307, it was held that a sale was complete and the title to lumber passed to the buyer, although it was thereafter to be hauled to another

place and there measured, and the balance of the purchase price determined by such measurement was then to be paid.

The question then recurs, was there a sufficient delivery of the lumber to the Kimball Lumber Company to make the sale complete as against the rights of the subsequent purchaser? In the sale of personal property, the delivery of the thing sold is essential as against the rights of third parties asserting a title, right or interest therein subsequently acquired from the seller. A delivery may be either actual or constructive, and in either event it will be effective to pass title. Where property is of such a nature and so situated that actual delivery thereof can be made, then that is necessary. Where the property is too ponderous and bulky for an actual change of its possession, a symbolical or constructive delivery thereof will be equivalent to and effective as an actual delivery. The delivery of such property may be made by doing everything necessary to identify it and by placing on it outward indicia to show a change of the possession and ownership.

In the case of *Little Rock & Ft. S. R. Co.* v. *Page,* 35 Ark. 304, it was held (quoting syllabus): "What constitutes delivery depends upon the situation and character of the property. Removal from the premises is not necessary. It is sufficient if the contract of sale has been definite and unconditional, and everything has been done in pursuance of it by the vendor, which is necessary to identify the property and separate it from other, so that it may be known what, specifically, has been sold."

In the case of *Smith* v. *Jones,* 63 Ark. 232, it was held (quoting syllabus): "Proof that the vendors of a large quantity of lumber directed the vendees to mark it in their name, which was accordingly done, is sufficient to support a finding that there was a delivery of the lumber in pursuance of sale." See also *King* v. *Jarman,* 35 Ark. 190.

It will thus be seen from these cases that the question as to whether or not a contract of sale is complete so as to pass title as against those subsequently obtaining an interest or claim to the property is determined by whether or not it was the intention of the parties to fully consummate the sale and pass the title, and whether or not such a delivery thereof was made as the nature of the property would admit of, and such outward indicia or marks of a change of ownership had been made so as

to advise third parties dealing therewith of such change of the ownership. *Lee Wilson & Co.* v. *Crittenden County Bank,* 98 Ark. 379.

In the case at bar the testimony on the part of the defendant shows that its agent was sent to the mill to estimate the lumber then stacked upon the yards and to take it up for the defendant. The lumber was stacked in piles, and this agent then estimated it in the presence of the seller, and after doing so marked upon each pile the number of feet it contained, and also the name of the Kimball Lumber Company, to whom the owner then sold it, and by these outward indicia of possession both the seller and the buyer intended to show that the lumber was actually delivered to the Kimball Lumber Company. Both the seller and the agent of the buyer testified that it was the intention then to make a complete sale of the lumber and pass the title thereto to the defendant. Of this the plaintiff was notified, because thereafter, on May 2, he entered into the above written contract with said Cox by which said Cox sold to him the other lumber and in this contract it is expressly stated that the lumber in controversy had been taken up and sold to the Kimball Lumber Company, and was excepted from said contract of sale to the plaintiff. In addition to this, at the time the lumber was estimated and marked in the name of the Kimball Lumber Company, an agreement was made between the defendant's agent and said Cox, the seller, that Cox would haul the lumber to the railroad station for the defendant, which was done; and this suit was not instituted until after such removal had been made.

We are of the opinion that there was sufficient evidence adduced upon the trial of this case to show a delivery of the lumber by said Cox to the Kimball Lumber Company on April 29, and that such delivery was made in pursuance of a sale which, according to the intention of both buyer and seller, was then complete; and that the title then passed to the Kimball Lumber Company, although it was understood that the balance of the purchase money was thereafter to be paid after the lumber had been graded and exact measurement made thereof. The title to the lumber having passed to the defendant on April 29, 1910, the plaintiff could not obtain

title thereto from Cox by the bill of sale executed to him on June 1, 1910.

It is urged by counsel for defendant that the uncontroverted evidence shows that the value of the lumber was far in excess of $400, and that it amounted at the lowest sum to $680, the price at which it was subsequently sold by the plaintiff. The defendant asks that the judgment be affirmed, in so far as it adjudges a recovery of the property to it, and it only seeks to have this judgment modified in regard to the value of the property. The verdict upon which this judgment is based is entire; and, even if it should be held that the judgment could be in part affirmed and in part modified, we do not think that such modification is warranted by the testimony relative to the value of this lumber. The lumber never had been graded, and there is no testimony as to its exact grades, or as to the amount that there was in the different grades. It appears from the letter of defendant introduced in evidence that the lumber of this character runs from common No. 1 to firsts and seconds, and that the value thereof ranges from $10 per M. to $28 per M. There were 22,000 feet of lumber replevied, and we can not say from this testimony whether it was of the value of $10 per M. or more. We can not say, therefore, from the testimony adduced that the jury were not warranted in finding the value of this lumber to be $400.

The judgment is accordingly affirmed.