BYRD *v.* BAKER-MATTHEWS LUMBER COMPANY.

Opinion delivered May 16, 1921.

1. EVIDENCE—PAROL TESTIMONY TO EXPLAIN WRITING.—Where some of the provisions of a contract for the sale of lumber indicated that the title was to pass as soon as the lumber was manufactured, while other provisions indicated that the title was not to pass until all the conditions of the contract had been complied with, parol evidence was admissible to show the intention of the parties.

2. SALES—WHEN TITLE PASSED.—In a buyer's action to recover possession of lumber from the sheriff who had seized lumber under execution against the seller, evidence *held* to sustain the trial court's finding that the lumber was to become the property of the buyer when manufactured, as against the contention that the agreement was that the title was to remain in the seller until performance of all the conditions of the contract.

Appeal from Craighead Circuit Court, Lake City District; *R. H. Dudley,* Judge; affirmed.

*Hawthorne & Hawthorne* and *A. P. Patton,* for appellants.

Under the written contract, title to the lumber levied on did not pass to appellee until all the conditions in the contract had been performed, and for that reason the execution lien of A. B. Jones Company took precedence over the claim of appellee.

Title to property does not pass until it has been inspected, where there is a provision in the contract providing for inspection. 72 Ark. 141; 83 *Id.* 395; 49 *Id.* 86; 65 *Id.* 33; 50 L. R. A. (N. S.) 111; 36 N. J. L. 449; 106 U. S. 505; 37 Pa. St. 187; 72 Miss. 809.

The undisputed testimony shows that the sheriff attached only such lumber as was manufactured and stacked after the execution came into his hands, as he did not attach any lumber that was inspected and marked "Property of Baker-Mathews Lumber Company."

*Lamb & Frierson,* for appellee.

This case was tried by the court sitting as a jury, by consent of parties, and its findings have all the force and effect and are as conclusive as the findings of a jury and verdict thereon.  60 Ark. 250.  The contract for the sale of the lumber was executed and not executory.  The sale was complete. 141 Ark. 393-404. The title passed. 20 N. E. 270; 120 N. W. 572. The question of intention as to delivery governs.  In case of bulky articles or ponderous ones, actual delivery is not necessary, but constructive delivery is sufficient, which is governed by the intention of the parties. 24 R. C. L. 56; 104 Ark. 344; 30 L. R. A. (N. S.) 461.  104 Ark. 344, is sustained by many Arkansas cases and cites them.  Another strong circumstance indicating delivery is the fact that the lumber was stacked or proper leased to appellee.  24 R. C. L. 57, § 321, and cases cited.  141 Ark. 393, 404; 100 U. S. 124; 103 Ark. 331; 112 *Id.* 63: 81 *Id.* 373; 116 Fed. 261; 100 U. S. 124.

The findings of the court are clear, positive and convincing, and are sustained by uncontradicted evidence and should be sustained.

HUMPHREYS, J.  Appellee instituted suit in replevin against appellants in the Craighead Circuit Court, Lake City District, to recover the possession of forty-two stacks and 50,000 feet of loose lumber, situated at Rhoads Bros. & Co.'s sawmill, about two miles from Black Oak, in said county, claiming to be the owner thereof, which

lumber was seized on the first day of April, 1920, by appellant, the sheriff of the county, under an execution issued on a judgment of A. B. Jones Company against Rhoads Bros. & Co. and placed in his hands on the 10th day of March, 1920.

Appellants, filed answer, denying that appellee was the owner of the lumber seized, and asserting its right to retain and sell same to satisfy the judgment obtained in said court at the January term in the sum of $2,505.43 in favor of A. B. Jones Company against J. T. and W. M. Rhoads, constituting the firm of Rhoads Bros. & Co.

The cause was submitted to the court sitting as a jury, upon the pleadings and evidence, which resulted in a verdict and judgment in favor of appellee for the possession of the lumber seized by appellants under the execution aforesaid, or $5,000, its value. From that judgment an appeal has been duly prosecuted to this court.

The facts, as disclosed by the record, necessary to a determination of the issue involved on this appeal, are as follows: On or about May 12, 1919, appellee procured a lumber manufacturing contract from L. D. Leach & Co. with Rhoads Bros. & Co. for a cash payment of $10,000 and the future delivery of a certain amount of lumber. At the time the manufacturing contract was procured, it obtained title to 800,000 feet of lumber on the mill yard of Rhoads Bros. & Co. On the same day, to-wit, May 12, 1919, appellee entered into a manufacturing contract with Rhoads Bros. & Co. and advanced the firm six or seven thousand dollars in cash on lumber to be thereafter manufactured. The written manufacturing contract, omitting the prices of the different sizes and kinds of lumber, is as follows:

"This memorandum and agreement, made and entered into this the 12th day of May, 1919, by and between Rhoads Bros. & Co., a copartnership composed of J. T. Rhoads of Jonesboro, Arkansas, and W. W. Rhoads of Cape Girardeau, Missouri, with offices at Black Oak, Arkansas, hereinafter known as party of the first part, and

Baker-Matthews Lumber Company, a corporation under and existing by virtue of the laws of Missouri, hereinafter known as the party of the second part, witnesseth:

"Party of the first part agrees to sell, and does sell, and the party of the second part agrees to buy, and does buy, the lumber hereinafter described and specified, subject to the prices, terms, provisions and conditions hereinafter specified, towit, two million two hundred and fifty thousand feet of red and tupelo gum, oak, elm, maple, cypress, ash, cottonwood, tupelo and sycamore lumber, at the following prices: * * *

"All of No. 3 common which develops with lumber covered by this contract.

"It is understood that the price on the No. 3 common which develops in furnishing the above stock is to be $10 per thousand.

"The above prices are for delivery f. o. b. cars at Black Oak, Arkansas.

"It is understood that the red and sap gum is to be separated in loading, but it is further understood that, in the event said second parties require the sap gum to be sorted and shipped in straight cars of each grade, that they are to allow said first parties an additional $1 per thousand covering the cost of sorting.

"It is understood that there is approximately 800 M′ of the various kinds of lumber above described on the mill yard of the parties of the first part at the present time, which is included in this contract and which is subject to all of the terms and provisions herein specified.

"This lumber shall be settled for by crediting the price of the same less 2 per cent., by the second party, against advances made, as herein provided, and any balance shall be accounted for and paid to the first party at the final discharge of this contract.

"It is further understood and agreed that all lumber applying on this contract is to be manufactured in a first-class, workmanship manner, and to be equalized and trimmed and to be of sufficient thickness when dry so

that the thicknesses will be standard, as provided by the regulations and rules of the National Hardwood Lumber Association.

"It is further understood that all lengths are to be piled separate, in piles not more than six feet in width, and at least three feet apart, and of sufficient pitch so as to insure the best results in drying. The twelve-foot piles are to have five sticks to the layer, and the fourteen feet and sixteen feet piles are to have six sticks to the layer, and the sticks are to be placed directly over each other in the pile, so that the lumber will dry out straight. All lumber is to be piled on good solid foundation twelve inches from the ground in the lowest place, the heads of the twelve-foot piles to be twelve inches higher than the tails of same. Heads of fourteen-foot and sixteen-foot piles to be twenty inches higher than the tails of same, the lumber to be piled loose in the piles so as to leave plenty of room for the circulation of air through the pile, all piles to be properly covered by said parties of the first part when completed.

"All lumber applying on this contract to be piled not less than 200 feet from the sawmill or other surrounding buildings, brush, or anything that would invalidate the 200 feet clear space clause provided in the insurance policies, and said parties of the first part further agree to at all times maintain said 200-foot clear space.

"It is understood and agreed that said parties of the first part are to lease, and do hereby lease, to parties of the second part the ground on which the lumber applying on this contract is piled, or to be piled.

"It is further understood and agreed that, when said first parties have complied with all of the terms and conditions of this contract, preliminary thereto and herebefore and hereafter provided, parties of the second part are to advance on the first and fifteenth of each month, for lumber put in pile during the preceding two weeks, $17 per thousand feet, the balance of the contract price

to be credited when the lumber is inspected and loaded out, subject to the terms hereinafter provided.

"It is further understood that no piles are to be estimated until the same are complete and properly covered.

"It is further agreed and understood that all lumber applying on this contract is to be cut from first-class, live merchantable timber.

"Parties of the first part agree to convey and transfer by bill of sale the piles of lumber covered by advances hereinbefore mentioned, together with a complete estimate of lumber, stipulating number of piles, length, thicknesses, and at what point located, each pile to be numbered and marked, 'Property of Baker-Matthews Lumber Company of Memphis, Tenn.'

"Parties of the first part agree to keep all labor bills incidental to the cutting of the timber, hauling of same and the labor pertaining to the manufacture and piling of all lumber and the delivery of the same f. o. b. cars shipping point, applying on this contract paid up in full, as it is specifically understood that the advances made to the parties of the first part are to be used for this purpose, and in no case are the advances to be made to the said first party to exceed the actual cost and expense pertaining to the manufacture of this lumber and in no event is the amount advanced to exceed $17 per thousand as herein provided.

"It is understood that the parties of the first part are not to operate their mill, or cut lumber for any other parties than said second parties to this contract, until all of the indebtedness to said second parties shall have been fully liquidated.

"All lumber applying on this contract shall remain on sticks until same is in good shipping condition before being loaded out and inspected, whch shall be not less than four months, unless sooner ordered shipped or taken up by said second parties.

"It is further understood and agreed that said first parties are to pay said second parties interest at the rate

of 8 per cent. per annum on all moneys advanced to them under this contract, and payment to be made and the lumber credited as delivered f. o. b. cars at Black Oak, Arkansas.

"All of the terms, prices and conditions of this contract to inure to the benefit of the heirs, assigns or successors of either party hereto.

"All lumber applying on this contract is to be measured and inspected in accordance with the rules and regulations of the National Hardwood Lumber Association, now in effect. In the event of a failure of the representatives of the parties hereto to agree to an inspection or measurement of said lumber, then parties of the second part shall make application to the secretary of the National Hardwood Lumber Association for a licensed inspector of said association to inspect the lumber applying on this contract, and such official inspection, if had, to be final and binding on the parties hereto. The expenses of such official association inspection and measurement to be borne equally by the parties hereto.

"It is further understood that parties of the second part are to carry a sufficient amount of insurance against fire loss to cover the market value of the lumber covered by this contract, if same can be procured in reputable and solvent insurance companies and the cost of said insurance to be charged to said first parties and taken out of the settlement of balances on lumber delivered herein.

"In witness whereof, the said first and second parties have caused these presents to be executed by their respective representatives and hereto set their hands and seals on the date first herein written in duplicate.

"Rhoads Bros. & Co.,

"By W. W. Rhoads.

"By J. R. Rhoads.

"Baker-Matthews Lumber Company,

"By H. W. Baker, Jr."

On November 3, 1919, a similar contract to the one copied was entered into between the parties advancing the prices to be paid for the lumber,

Immediately after the execution of the contract Rhoads Bros. & Co. began to manufacture the lumber thereunder, receiving advances every two weeks, based upon preliminary inspections. Baker and Matthews leased from Rhoads Bros. & Co. the lands upon which the mill was situated and adjoining the mill site. Appellee paid Rhoads Bros. & Co.'s entire pay roll for manufacturing the lumber from time to time, and took an assignment thereof. Appellee also paid the lien of Dr. W. E. Yount for logs out of which the lumber was manufactured and had the lien assigned to itself. A number of letters, receipts and pay rolls were introduced and made a part of the record, showing advances and payments made by appellee to Rhoads Bros. & Co. An account between appellee and Rhoads Bros. & Co. was also filed, showing that at the time the contracts were completed Rhoads Bros. & Co. was indebted to appellee several thousand dollars, on account of said payments and advancements. The effect of the testimony of H. W. Baker, appellee's secretary, and W. L. Brisco, appellee's inspector, was that it was in contemplation of the parties from the inception of the contract that all the lumber of the kind and character specified in the contract should become the property of appellee as soon as manufactured; that the stacking, inspection and marking of the stacks were a method of ascertaining the advances to be made, and had no relation to the method of transferring the title to the lumber. The debt of A. B. Jones Company against Rhoads Bros. & Co. existed at the time appellee and Rhoads Bros. & Co. entered into the manufacturing contract. The evidence tends to show that A. B. Jones Company understood the nature and character of the contract entered into between appellee and Rhoads Bros. & Co., and, during the period the lumber was being manufactured, received payment of about $500 from appellee upon the debt. As we understand the evidence, none of the indebtedness of A. B. Jones Company against Rhoads Bros. & Co. was on account of advances made during the time the lumber was being manufactured. While there

is a conflict in the evidence as to whether an inspection had been made of the stacks levied upon at the time the execution was received by the sheriff, the undisputed evidence does show that all the conditions in the written contract had not been complied with at that time.

Appellant's contention for reversal is that, under the written contract, title to the lumber levied upon did not pass to appellee until all the conditions in the contract had been performed; and, for that reason, the execution lien of A. B. Jones Company took precedence over any claim of appellee to said lumber. There is no provision in the written contract specifying when title to the lumber should pass from Rhoads Bros. & Co. to appellee. Some of the provisions indicate that the intention was for the title to pass as soon as the lumber was manufactured, and other provisions indicate that the title should not pass until all the conditions in the contract had been complied with. There is an ambiguity in the contract as to when title to the lumber should pass. It was therefore admissible to show the intent of the parties to the contract at the time of its execution, with reference to the time of delivery. In the case of *McDermott* v. *Kimball Lumber Co.,* 102 Ark. 344, the court, in discussing this question, announced the doctrine that "title to chattels sold passes where such is the intention of the seller and buyer, though something remains to be done, as, for example, the fixing of the quantity or amount of the property or the payment of the purchase money." The written contract in the instant case might well be construed as intending to pass the title to the lumber in question as it was manufactured and all the conditions in the contract as relating to the mode and method of settlement between the parties, but there are conditions which might also be construed as indicating that the title to the lumber should not pass until all the conditions in the contract were fully performed. All the oral evidence, however, and we think many of the potent circumstances surrounding the case, indicate that it was the intention of the parties that the

title to the kinds of lumber specified in the contract should pass to the appellee when manufactured. Both H. W. Baker and W. L. Brisco testified that such was the intention of the parties to the contract. The fact that appellee advanced the money to pay for the logs and to pay all the labor in manufacturing them into lumber is a strong circumstance tending to establish an intention between the parties that the lumber, when manufactured, should become the property of appellee. There are other circumstances tending to establish that such was the intention of the parties. For example: The lease of the mill site and adjoining lands by Rhoads Bros. & Co. to appellee and the procurement of insurance on the lumber in the name of appellee. Having concluded that there is ambiguity in the written contract as to when the title to the lumber should pass to appellee, we find ample evidence in the record to sustain the specific finding of the court to the effect that it was the intention of the parties that the entire output of the mill of Rhoads Bros. & Co. should become the property of appellee when manufactured.

No error appearing, the judgment is affirmed.