ALLIS-CHALMERS MFG. Co. *v.* GLOVER.

5-2601                                              355 S. W. 2d 606

Opinion delivered April 2, 1962.

*House, Holmes, Butler & Jewell,* for appellant.

*Tom Lovett, Barber, Henry, Thurman & McCaskill* and *Moore, Chowning, Mitchell, Hamilton & Burrow,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves an action in replevin. Suit was brought by appellant, Allis-Chalmers Manufacturing Company, against

appellees, Sherril L. Glover, Carroll Glover, E. V. Glover, d/b/a Glover Brothers, and Associates Discount Corporation, to recover possession of three used Allis-Chalmers Motor Scrapers, which were purchased by appellees, Glover Brothers, from Kern-Limerick, Inc., of Little Rock in the spring of 1960. The purchase instruments were in the form of lease agreements but it is in effect conceded that the agreements were actual sales. The lease agreements and notes for the balance of the purchase price were assigned by Kern-Limerick to appellee, Associates Discount Corporation and appellee-intervener, James Talcott, Inc.

Appellant bases its claim for possession on the contention that Kern-Limerick had, on November 12, 1959, sold the same three motor scrapers to Consek, Inc., which corporation in turn had executed conditional sales contracts and promissory notes in favor of Kern-Limerick, evidencing and securing the entire purchase price of the machines, and on the same day Kern-Limerick assigned these instruments to appellant, Allis-Chalmers, as payment on an indebtedness owing appellant by Kern-Limerick.

On trial before the Circuit Court sitting as a jury, appellant contended that by virtue of these alleged earlier transactions its claim to the three machines was prior to the claims of appellees.

The material evidence produced by the respective parties is practically undisputed. From a careful review of the record, we find that there is substantial evidence to support the facts which are summarized as follows:

Kern-Limerick, Inc. was a retail dealer in heavy equipment in Little Rock, Arkansas. It had been the Allis-Chalmers dealer for many years. Consek, Inc. was an Arkansas corporation organized in August of 1959 with all of its stock owned by R. C. Limerick, Jr., President of Kern-Limerick, Inc. Consek had only a net worth of $300, being its original capital. It had no office, warehouse, lot, parts or employees. All of its operations were

conducted at Kern-Limerick's place of business by Kern-Limerick employees.

In November of 1959, Kern-Limerick, Inc., pursuant to a prearranged plan, agreed to by Allis-Chalmers, ordered three new pieces of Allis-Chalmers Equipment for sale to a Mr. Linwood Smith, taking in trade the three pieces of equipment, the title to which is at issue before this Court. It is clear from the record that generally when a dealer sells equipment the factory is paid immediately. In the present instance Kern-Limerick did not have sufficient cash to pay Allis-Chalmers in full for the machinery ordered. Consequently, pursuant to the agreement with Allis-Chalmers, R. C. Limerick, Jr., caused Consek to execute conditional sales contracts to Kern-Limerick, Inc., purporting to represent a sale by Kern-Limerick, Inc. to Consek of the three pieces of equipment traded in, which conditional sales contracts Kern-Limerick then assigned to Allis-Chalmers. This assigned paper was security for the payment by Kern-Limerick to Allis-Chalmers of the balance due on the new machinery sold by Kern-Limerick to Smith. Consek made no down payment or trade-in on the purported sale to it but the entire purchase price of approximately $42,000 plus finance charge, was to be paid in installments. Kern-Limerick paid the installments and Allis-Chalmers fully knew of Consek's position relative to Kern-Limerick and knew Consek's financial position.

The used machinery was held on Kern-Limerick's lot in Little Rock and co-mingled with other machinery owned by Kern-Limerick being held out for sale to the general public. The machinery was the same color as other machinery owned by Kern-Limerick and was not painted black as was other machinery owned by Consek. It did not bear Consek's name on it as did other machinery owned by Consek. All of this was with the knowledge of Allis-Chalmers.

In the spring of 1960, the three machines were subsequently sold by Kern-Limerick to Glover Brothers under separate contracts, a bona fide purchaser for value without notice of any claim by Consek or Allis-Chalmers.

Two of the Glover Brothers' contracts were then assigned to appellee Associates Discount and one to appellee, James Talcott, Inc.

Based upon these facts the trial court was confronted with a situation created by the conduct of an original owner who had sold the same chattels twice and who had put into circulation and obtained the proceeds of two sets of commercial paper covering the same chattels. The question to be determined was whether appellant, as the holder of the earlier conditional sales contracts and notes, was entitled to prevail over the subsequent innocent purchaser of the machines and the finance companies which acquired the contracts and notes executed by the latter purchaser.

The trial court found in favor of appellee and judgment was accordingly entered. From that judgment comes this appeal.

Since this is an appeal from a judgment of a circuit court sitting as a jury, the principal question presented for our consideration is whether there is substantial evidence to support a finding that there was not a completed bona fide sale from Kern-Limerick, Inc., to Consek, Inc.

In the case of *Securities Investment Company of St. Louis* v. *Williams*, 190 F. Supp. 261 (1960) Judge J. Smith Henley had occasion to examine facts identical to the facts in the case at bar. In that case the first finance Company, Securities Investment Company, purchased paper from Kern-Limerick, which paper was a conditional sales contract purporting to represent a sale of a dragline from Kern-Limerick to Consek. The dragline was left on Kern-Limerick's lot and was later sold to a purchaser, Williams. The first question considered by the Court was whether the "sale" of the dragline to Consek was bona fide. In that case the position of the first finance company was much stronger than the position of Allis-Chalmers in the instant case for the reason that the first finance company was not at all involved in the preliminaries leading up to the "sale" by Kern-

Limerick to Consek. The court in an excellent opinion reviewed the Arkansas cases at some length. The Court put its finger on the essential ingredient that it found lacking there and which is lacking in the instant case. The Court said:

". . . in order for a sale of personal property to be binding on subsequent innocent purchasers, there must be an actual or constructive delivery of the property to the vendee, or at least an agreement whereby the vendor holds the property as bailee for the purchaser."

The opinion cited the following Arkansas case: *McDermott* v. *Kimball Lumber Company,* 102 Ark. 344, 144 S. W. 524, and quoted the following:

". . . in the sale of personal property, the delivery of the thing sold is essential as against the rights of third parties asserting a title, right or interest therein subsequently acquired from the seller. A delivery may be either actual or constructive, and in either event it will be effective to pass title. Where property is of such a nature and so situated that actual delivery thereof can be made, then that is necessary. Where the property is too ponderous and bulky for an actual change of its possession, a symbolical or constructive delivery thereof will be equivalent to and effective as an actual delivery. The delivery of such property may be made by doing everything necessary to identify it and by placing on it outward indicia to show a change of the possession and ownership."

The trial court there further said:

"Assuming without deciding that the separate corporate entity of Consek should be recognized, there was never any sale to Consek which would be valid as to innocent third parties."

The Court properly found that there was no delivery, either actual or constructive of the machine to Consek and further observed as to what could have been done as follows:

"It is manifest that the machine was susceptible of physical delivery to Consek. It could have been painted black and the name 'Consek' inscribed upon it. It could have been segregated on the lot away from the Kern-Limerick stock-in-trade, or, at the very least, some tag or sign could have been placed upon it which would indicate that it had been sold to Consek and was no longer a part of the Kern-Limerick inventory. Nothing of the kind was done. The machine was simply left where it had been placed originally as part and parcel of the Kern-Limerick machinery. There was no intention to deliver, no delivery, no sale. The 'sale' was merely a paper transaction which enabled Kern-Limerick to get $20,000 from the plaintiff while retaining possession of the machine and full power to sell it and make delivery to the first willing buyer that might appear.''

From what has been said above, we cannot escape the conclusion that there is substantial evidence to support the finding that there was no ''sale'' by Kern-Limerick to Consek; that the transaction between them was simply a part of the financing arrangement of the initial sale to Linwood Smith in which Allis-Chalmers was immediately and directly involved and the relationship between Kern-Limerick and Consek was well known to Allis-Chalmers; that there being no ''sale'' the assignment of the executed instruments to Allis-Chalmers by Kern-Limerick passed nothing to Allis-Chalmers which it could interpose as against third parties. See *Coffman* v. *Citizens Loan and Investment Company,* 172 Ark. 889, 290 S. W. 961.

As to the question of whether appellees are innocent parties[1] without unduly extending this opinion suf-

---

[1] Appellant's strongest contention on this point is that the instruments which were assigned to Allis-Chalmers on November 12, 1959, were filed in the office of the Recorder of Pulaski County on November 27, 1959, and were so filed at the time appellees made their purchase. It is noted that the Arkansas Motor Vehicle Registration Law does not apply to construction equipment such as Motor Scrapers and there is no provision in our law for the recording of conditional sales contracts covering personal property. There is, therefore, no question of any record notice in this case.

fice it to say that there was no substantial showing that appellees were not bona fide purchasers for value without notice of any claim by Consek or Allis-Chalmers. In the absence of error, it follows that the judgment is affirmed.