BLOOM *v.* HOME INSURANCE AGENCY.

Opinion delivered July 12, 1909.

1. CONTRACTS—RESTRAINT OF TRADE.—Contracts in partial restraint of trade, which are reasonable and founded upon a legal consideration, will be enforced.   (Page 372.)

2. GOOD WILL—DEFINITION.—Good will in a business, which is the probability that old customers will resort to the old place for the purpose of trade, is recognized in law as a thing of value, which may be sold. (Page 373.)

3. CONTRACT—REASONABLENESS OF CONTRACT IN RESTRAINT OF TRADE.— Where an incorporated fire insurance agency sold out its business and good will to another company, and its principal stockholder agreed with the latter company not to engage in the fire insurance business at a certain place for the term of five years, such contract was reasonable and binding upon him individually, as well as upon the insurance agency in which he was interested.   (Page 373.)

4. MONOPOLIES—COMBINATION OF LOCAL INSURANCE AGENCIES.—An agreement between several local insurance agencies, having no authority to fix the price or premium to be paid for insuring property, to transfer their business and good will to another, with the view of decreasing the expenses of the several agencies, does not create a combination in violation of the "anti-trust act" of January 23, 1905. (Page 374.)

5. CORPORATIONS—CONTRACT MADE BY PROMOTERS—VALIDITY.—Where a contract made on behalf of a corporation before its organization was subsequently adopted by it and recognized by all the parties as binding on it, all parties to it are bound by its terms.   (Page 375.)

6. SAME—POWER TO CONTRACT.—Within the scope of the purposes of its creation, a corporation has the same power to make contracts which natural persons have.   (Page 376.)

7. SAME—POWER TO CONTRACT IN RESTRAINT OF TRADE.—A corporation engaged in the fire insurance business, as incident to the sale of its business and good will, may agree to refrain from engaging in the business of a local fire insurance agency.   (Page 376.)

8. Same—ultra vires—estoppel.—After a corporation has received the benefits of a contract into which it has entered, it will not be permitted to violate the obligations of that contract upon the ground that it had no power to make it. (Page 376.)

9. Parties—real party in interest.—Where a contract was entered into by the promoters of a corporation on its behalf before its organization, the corporation, being the real party in interest, was authorized to sue to enforce such contract; but in such case it was not error to permit the promoters to be brought in as parties plaintiff in order to secure a complete determination of the controversy. (Page 377.)

10. Injunction—restraint against engaging in trade—parties.—While a person who has agreed not to engage in a designated business in a certain locality for a period of time may be restrained from engaging in such business for such period and within said territory, either for himself individually or as a partner of any firm or member of any corporation engaged in such business, and from holding himself out to customers in that territory as being a member of such firm or company, it is error to restrain a firm or corporation of which he is a member, not made a party to the proceedings, from engaging in such business. (Page 377.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed with modification.

### STATEMENT BY THE COURT.

The Home Insurance Agency, one of the plaintiffs below, instituted this suit gainst the defendant, E. B. Bloom, and in its complaint prayed for an injunction restraining the defendant, either for himself or for others, from soliciting insurance in Jefferson County, Arkansas, for five years from November 1, 1905. Subsequently W. Z. Tankersley, F. M. Rosenberg, George M. Wells, and Russell Hollis were made parties plaintiff to the action. Prior to September 16, 1905, W. Z. Tankersley, the Bell-Vernon Company, represented by F. M. Rosenberg, George M. Wells & Company, a firm composed of said Wells and Hollis, and the Travellers Insurance Company of Pine Bluff, were the owners of four separate local insurance agencies in the city of Pine Bluff, Arkansas, and were engaged in the business of soliciting insurance as agents for general insurance companies that wrote and executed policies of insurance. The defendant was the secretary of the Travellers Insurance Company of Pine Bluff, Arkansas, which was engaged in the business of writing

fire and tornado insurance and issuing policies of insurance therefor, in addition to owning a local agency in said city which acted as an agent in solicting insurance business. The defendant also owned 400 shares of the capital stock of said Travellers Insurance Company of the par value of $10,000, and was actively engaged for that company in soliciting insurance. There were a number of other insurance agencies in Pine Bluff engaged in the same business. The plaintiffs and defendant on September 16, 1905, entered into negotiations for forming a corporation to be known as the Home Insurance Agency, for the purpose of engaging in the business of conducting an insurance and real estate agency at Pine Bluff, which would be capitalized at $17,000, and would be actually incorporated on November 1, 1905. On September 16, 1905, the parties entered into written agreement, by which the above named four local agencies did sell and transfer to said Home Insurance Agency "the entire insurance business of their respective agencies, together with all the expirations therein, including good will, life insurance only excepted." In consideration of the sale and transfer, each of the agencies was to receive such proportion of the capital stock of the corporation, the Home Insurance Agency, as was represented by the amount of the expirations of the business of each agency, with adjustments, so that each of the four agencies should own one-fourth of the entire capital stock. The contract also provided that the parties thereto would associate in the same office for the purpose of conducting the said agency business, and would deliver to the Home Insurance Agency upon its incorporation all the "books, registers, supplies and other papers relating or belonging to the insurance business of the several agencies."

The following provision, which forms primarily the basis of this action, was made a part of said written contract: "That the said W. Z. Tankersley, George M. Wells, Russell Hollis and F. M. Rosenberg, beginning with said first day of November, 1905, obligate and bind themselves to render their personal service in good faith to the carrying on of the business of the aforesaid Home Insurance Agency for the the term of at least two years, at and for such salary as the board of directors may fix and determine, which salary, however, we suggest and recommend to be $150 per month to each of said parties; and the said above

last-named parties, together with E. B. Bloom and the Travellers Insurance Company, agree to and among themselves and with the said Home Insurance Agency, that they will not, either directly or indirectly, for themselves or as employees for others, for the term of five years from the said first day of November, 1905, within the limits of Jefferson County, Arkansas, engage in any line of insurance mentioned and contemplated in the articles of incorporation, except life, save only in the employ of the said Home Insurance Agency."

This contract was executed by the defendant E. B. Bloom individually and also by the Travellers Insurance Company by E. B. Bloom, its secretary.

In pursuance of said contract the Home Insurance Agency was incorporated on November 1, 1905, and the capital stock thereof issued to the parties. For the Travellers Insurance Company there were issued 169 shares to E. B. Bloom, trustee, and one share of said capital stock to E. B. Bloom; but all these 170 shares were actually owned by the Travellers Insurance Company. In consideration of said shares of capital stock, the separate agencies, including E. B. Bloom for the Travellers Insurance Company, delivered to the Home Insurance Agency all the properties and business set out in the above contract of September 16, 1905. On May 25, 1907, the Home Insurance Agency paid a dividend of $7.50 to said E. B. Bloom on the one share of stock in his name and on the stock in his name as trustee the sum of $1,267.50. In July, 1908, these 170 shares of the capital stock of the Home Insurance Agency, issued as above and owned by the Travellers Insurance Company, were sold by that company to the Home Insurance Agency for the sum of $5,000.

On June 9, 1908, the defendant became a member of the firm of Banks, Bloom & Company, and later, of the firm of Bloom, Hanf & Bloom; and these firms and the defendant himself thereafter engaged in the business of soliciting fire insurance in Jefferson County, Arkansas, and in violation of the above provision of said written contract.

The chancellor decreed that defendant be enjoined from soliciting fire insurance in Jefferson County, Arkansas, for five years from the first day of November, 1905, either for Banks, Bloom & Company, or for Bloom, Hanf & Bloom, or for any

other person, firm or corporation, or for himself personally; and from engaging in any line of insurance, except life, in said county for said period of time; and the firms of Banks, Bloom & Company and Bloom, Hanf & Bloom were enjoined for said period from engaging in or conducting any insurance business, save life, within the limits of Jefferson County as long as said E. B. Bloom was a member of said firms or directly or indirectly interested therein, or his name connected with said firms.

From that decree the defendant has appealed to this court.

*Young & Rowell, White & Altheimer* and *W. B. Alexander,* for appellant.

1. The contract was executed by Bloom without consideration, and without the sale of a good will or a business, and is in restraint of trade. 2 Beach, Cont. 1575; 6 L. R. A. (N. S.), 850; 10 *Id.* 268; 28 C. C. A. 492; 29 *Id.* 211; 62 *Id.* 487; 24 A. & E. Enc. Law (2 Ed.) 851; 62 Ark. 105; 46 L. R. A. 142; 4 *Id.* 154.

2. The contract is not enforceable for want of mutuality. 85 Ark. 153; Beach. Mod. Law of Const. § 980; 6 A. & E. Enc. Law (2 Ed.), p. 730; 9 Cyc. 541. Contracts in restraint of trade are construed strictly. 9 Cyc. 541; 73 Ark. 338; 74 *Id.* 41.

3. The Home Insurance Company had no cause of action, and the complaint could not be amended by making others plaintiffs. 34 Ark. 144; 56 *Id.* 167; 18 Ala. 395; 57 *Id.* 168; 49 Me. 536; 51 Cal. 154.

4. The combination formed is clearly against the anti-trust laws of Arkansas. Acts 1905, p. 5; 65 L. R. A. 347; 52 *Id.* 262; 139 N. Y. 251; 23 L. R. A. 221; 40 Ark. 266; 193 U. S. 352; 36 Ohio 666.

*Bridges, Wooldridge & Gantt* and *Taylor & Jones,* for appellees.

1. The contract is not in restraint of trade. 62 Ark. 101; 48 *Id.* 145; 48 *Id.* 216.

2. It was not executed to violate the anti-trust law, and was based upon a valuable consideration. 78 Am. St. Rep. 613; 74 Am. Dec. 746; 48 Am. Rep. 269; 60 *Id.* 464; 24 Ark. 201; 64 *Id.* 637; 62 *Id.* 108.

3. There was mutuality of promise. Page on Const. § 1615; 44 L. R. A. 258. Appellant and the Travellers Insurance

Agency received the benefits accruing to them by accepting the contract, and *ultra vires* cannot be pleaded.   70 Ark. 238; 6 L. R. A. (N. S.) 870; 63 Ga. 103; 10 Cyc. p. 1156, note 35 and pp. 1157-8-9-10; 74 Ark. 377; *Ib.* 190; 77 *Id.* 109; 77 *Id.* 128.

4.   The contract was ratified by the Home Insurance Agency, and it cannot take advantage of its own acts or omissions to escape liability.   21 Am. St. 110; 10 Cyc. 1071; 44 Ark. 383; 2 Nev. 257; 35 Ark. 365.

5.   The complaint was properly amended.   Kirby's Dig. § 6148.   The court's discretion will not be controlled unless clearly abused. 26 Ark. 360; 58 *Id.* 504; 64 *Id.* 257; 26 *Id.* 465.

FRAUENTHAL, J., (after stating the facts.)   The defendant admits the execution of the above contract, by which he agreed that he would not engage in the insurance business mentioned in said contract at the place and for the time therein set forth. He contends, however, that this is a contract in restraint of trade, and is therefore invalid.   The doctrine that is invoked to avoid a contract in restraint of trade is based upon a public policy.   But a contract is not against a sound public policy that only partially limits a person's business, and leaves open to him practically an unlimited field of industrial activity, and which does not injuriously affect the interest of the public, where it only prevents a person from carrying on a particular business. In such case there is no good reason for restricting the freedom of contracts.   The rule with reference to such contracts is thus stated in the case of *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 353, quoted with approval by the Supreme Court of Michigan in the case of *Up River Ice Co.* v. *Denler*, 114 Mich. 296:

"Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill or talent by any contract that he enters into.   On the other hand, public policy requires that when a man has by skill or by any other means obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and, in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser.   In such a case the same public policy that enables him to do that does not restrain him from

alienating that which he wants to alienate, and therefore enables him to enter into any stipulation, however restrictive it is, provided that restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract."

And so it has been by this court uniformly held that where a restraint of trade is limited as to time and place and is reasonable, the agreement is not against public policy and is not invalid. In the case of *Webster* v. *Williams,* 62 Ark. 101, this court announces the principle as follows:· "Contracts in partial restraint of trade, if they are reasonable and founded upon a legal consideration, will be enforced." *Keith* v. *Herschberg Optical Co.,* 48 Ark. 138; *Daniels* v. *Brodie,* 54 Ark. 216; 1 Page on Contracts, § 375; 9 Cyc. 529.

Ordinarily, the agreement to refrain from a calling within a given space and for a specified time must accompany a sale of a business property itself. But if the enterprise is disconnected with any plant or tangible property, and is a business with a good will and custom, it is still valid to agree, as a protection to the purchaser thereof, from competition in that line of business, to discontinue such calling, and abstain from such business. 1 Page on Contracts, § 373; *Wood* v. *Whitehead Bros. Co.,* 165 N. Y. 545.

In the case at bar each insurance agency that was a party to the contract owned a separate business. Each agency had what are called, in the insurance business, expirations. These consisted of custom and trade which would ordinarily be renewed in and held by such agency. These expirations were considered property. It was actually the good will of the agencies. Good will is "the probability that the old customers will resort to the old place for the purpose of trade." It is recognized in law as a thing of value which may be sold. 1 Page on Contracts, § 374.

Each agency by this contract sold its expirations, good will and business. That constituted a thing of value; and incidental thereto they had the legal right to protect the purchaser in that business which he thus acquired by agreeing to refrain from engaging in the same business within Jefferson County for a period of five years. Such a contract was therefore not invalid. Under the evidence in this case the defendant was an active

force and party in the Travellers Insurance Company. By his personal efforts in soliciting business for that company a large amount of its custom was obtained, and it is but reasonable to presume that a great part of that trade was attracted and retained by him personally and would follow him personally. The good will of that company in its local agency was largely the good will of the defendant. And the defendant was also interested in all the properties and business of the Travellers Insurance Company. He was a large stockholder in that corporation, and therefore actually owned a part of the business and good will which that company sold; and as such stockholder the defendant received a part of the consideration which was paid to that company therefor.

In the case of *Up River Ice Co.* v. *Denler,* 114 Mich. 296, a stockholder in a corporation which was engaged in the ice business sold his stock in the company, and in consideration of the purchase agreed not to engage in the ice business at a specified place. In a suit to enjoin him from a violation of that contract he contended "that contracts of this character are enforceable only when connected with the good will of some business, and that individually he owned and sold no business." In that case the court held that the money received by him on the sale of his stock of the corporation was a sufficient consideration to support the agreement of the individual stockholder not to engage in the business that had been conducted by the corporation.

The defendant received as a shareholder of the Travellers Insurance Company a valid consideration for his agreement not to engage in the insurance business; and this agreement was connected with a sale of a business and property in which he was interested. His interest in the property and good will of the local agency of the Travellers Insurance Company which were sold, and the obligations which he assumed by the execution of the contract, were the same in legal effect as if the company with which he was connected, and which he partly owned, had been a partnership instead of a corporation. The contract which he thus executed was binding on him in all its terms.

The various parties to the contract were agents whose business consisted in soliciting insurance for insurance companies throughout the United States and other countries that actually

wrote insurance and issued policies. Under the evidence in this case and the finding of the chancellor, these agencies did not fix or regulate the price or premium to be paid for insuring property. The sale of these agencies to the company did not, under the evidence, affect that price in any way. The object of associating themselves together was to decrease the expenses of the several agencies; and the object of requiring an agreement that all parties would abstain from soliciting the same kind of insurance business was to keep the good will of the various agencies, and thus retain the total volume of business of all the agencies. There was no evidence that showed that this was a combination for the purpose of fixing or regulating the price of insurance, or that this agreement could have that effect. The contract was therefore not invalidated by the act of the General Assembly of Arkansas, approved January 23, 1905, and commonly known as the "anti-trust law." Acts 1905, p. 1.

The purpose and aim of this contract was not to stifle competition. Its object was to sell and transfer a business and the good will of that business. To maintain that good will in its integrity as a thing of value, it was essential that the vendor should not solicit and thus destroy that custom and trade which he had sold. It was therefore not invalid for the vendor to agree, for the purpose of protecting the vendee in his purchase of that good will, to abstain from engaging in the business within a limited space and for a limited time.

It is urged that, because the Home Insurance Agency was not incorporated, and therefore not in existence, at the date of the contract, there was a lack of mutuality, and the contract is not effective on that account. But a promise that lacks mutuality at its inception becomes binding on the promisor after performance by the promisee. Where, therefore, a corporation, after its organization, makes the original agreement its own contract by adopting and acting on it, the original contract becomes binding on it; and where all the parties after such organization recognize and act on the original contract, all parties to it are bound by its terms. 9 Cyc. 329; 10 Cyc. 263; *Perry* v. *Little Rock, etc., Ry. Co.* 44 Ark. 383.

In the case at bar the Home Insurance Agency was duly organized on November 1, 1905, and it then accepted and adopted

the contract, which was in legal effect a proposal to the future corporation. All the parties thereafter recognized the contract as effective and acted upon it. The Home Insurance Agency, in conformity with the contract, issued its stock to the various parties, and took over the books, papers, expirations and good will of the various agencies. The defendant, in conformity with the contract, then received and accepted the stock. The contract thus became mutual and binding on all the parties.

It is also urged that the Bell-Vernon Company and the Travellers Insurance Company were corporations, and it was beyond the powers of these corporations to enter into the contract to refrain from engaging in the business of a local insurance agency; and on this account the contract was not mutual, and therefore not binding on the defendant. But the contract was but an incident to a sale of property, and it was within the implied power of these corporations to make any disposition of their property which in the their judgment was for the benefit of the corporations. It is not shown that the contract was without the scope of the purposes of their creation; and within that scope these corporations had the same power to make and take contracts which natural persons have. The presumption is that this contract made by these corporations was not *ultra vires*. But, if it should be considered that this contract was in excess of the powers of these corporations to enter into, yet, as has been said above, the contract has been so carried out that these corporations have received the benefits thereof. They would not therefore be permitted to violate the obligations of that contract upon the ground that they did not have the power to make it, after having thus received the fruits and benefits thereof. *Bloch Queensware Co.* v. *Metzger,* 70 Ark. 238; *Minneapolis F. & M. Ins. Co.* v. *Norman,* 74 Ark. 190; *Arkadelphia Lbr. Co.* v. *Posey,* 74 Ark. 377; *Ark. & La. Ry. Co.* v. *Stroude,* 77 Ark. 109; *White River, L. & W. Ry. Co.* v. *Star R. & L. Co.,* 77 Ark. 128; 5 Thompson, Corp. § 6021; 10 Cyc. 1156.

The defendant cannot, therefore, on this account claim that the contract so lacked the requisite of mutuality that it was not binding on him.

This suit was originally instituted by the Home Insurance Agency as the sole plaintiff, and on the same day of and before

the trial below the other plaintiffs were made parties to the suit over defendant's objection. It is urged that the Home Insurance Agency had no cause of action under the contract, because it was not in existence at the time of the execution thereof; and that therefore the complaint could not be amended by making other parties plaintiff who may have had a right of action thereon.

By section 5999 of Kirby's Digest it is provided that every action must be prosecuted in the name of the real party in interest, with certain exceptions which do not apply here. The beneficial owner is the real party in interest within the meaning of this provision of the code. 30 Cyc. 45. Where a contract is entered into for the benefit of a third person, the latter is the real party in interest; and a majority of the American courts have adopted the rule that such person may maintain an action for the violation of the contract. *Lawrence* v. *Fox,* 20 N. Y. 268; *Brewer* v. *Dyer,* 7 Cush. (Mass.) 337; 30 Cyc. 65.

The contract which is the foundation of this suit was executed for the benefit of the Home Insurance Agency; and later, when the Home Insurance Agency came into existence, it was recognized, adopted and acted upon by all the parties as the contract of that company. It was therefore the real party in interest and a proper party plaintiff. There was therefore a cause of action with a proper plaintiff set forth by the complaint. The court had then the right to amend the complaint by adding to or striking out the name of any party at any time in furtherance of justice. Kirby's Digest, § 6145. And the question as to when and whether such parties should be brought in as necessary to a complete determination of the controversy is within the sound discretion of the trial court. And in this case we do not think that discretion has been abused. 31 Cyc. 477.

In the decree the chancellor also enjoined the firms of Banks, Bloom & Company and Bloom, Hanf & Bloom, for said period, from engaging in or conducting any insurance business, save life, within Jefferson County as long as defendant was interested in or connected with said companies. It is true that if the defendant engaged in such business during the term and within the territory specified, either individually or as a partner in a firm, or if he caused it to be believed among the customers of the agency transferred that he was a partner or member of the

competitive companies, this would be a breach of the contract by him. *Daniels* v. *Brodie,* 54 Ark. 216. But the above firms or companies were not parties to the contract, and were not parties to this suit, and could not be bound by this decree. The decree should enjoin the defendant only from engaging in said business for said period and within said territory, either for himself individually or as a partner of any firm or member of any corporation engaged in said business, and from holding himself out to the customers of the insurance business in that territory that he was a member of such firm or company.

To the extent that the decree enjoins the above named firms or companies, it is erroneous, and it should be modified so as to enjoin only the defendant. And, so modified, the decree will be affirmed.