JACKSON *v.* MUTUAL FIRE INSURANCE ASSOCIATION OF ARKANSAS.

Opinion delivered June 26, 1922.

1. INSURANCE—LIABILITY BEFORE LICENSE SECURED.—Where plaintiff made application and paid the premium on a fire insurance policy with a mutual company, but the premises were burned before the company secured a license to do business in the State, and the company returned the premium, plaintiff has no enforceable claim, as the company, under Crawford & Moses' Dig., §§ 6019-6023, had no right to enter into a binding contract of insurance before securing a license.

2. INSURANCE—UNLAWFUL CONTRACT—RATIFICATION.—Where plaintiff applied for a fire insurance policy and paid the premium, but the premises burned before the company had secured a license to do business, the subsequent conduct of the company in recognizing plaintiff's claim could not create a contract; that company having no authority to make such a contract.

Appeal from Monroe Circuit Court, *George W. Clark,* Judge; affirmed.

*Bogle & Sharp,* for appellant.

There was a parol contract, binding appellee to pay appellant for any loss she might sustain, and said contract is enforceable. 26 C. J. 45; 63 Ark. 205; 67 Ark. 433; 35 N. D. 160; 209 Ill. A. 557; 94 U. S. 621; 124 Ark. 505.

A parol contract of insurance, evidenced by a binder intended to cover the property until the issuance of a policy, is not invalidated by the fact that a standard form of policy is prescribed by statute. 26 C. J. 48.

*Emerson, Donham & Shepherd* and *S. A. Jones,* for appellee.

Appellee had no legal capacity to enter into a contract until about five months after appellant's loss, hence there could have been no binding contract.

The writing held by appellant was an application for insurance, with a receipt for the money paid.

*Bogle & Sharp,* for appellant, in reply.

A contract made by the promoters of a corporation before it was formed becomes the contract of the corporation. 14 C. J. 257; 37 Ark. 164; 91 Ark. 367; 97 Ark. 248.

WOOD, J. This is an action by the appellant against the appellee to recover the sum of $685 which the appellant alleged was due her from the appellee on a contract of fire insurance. She attached as an exhibit to her complaint, which was in evidence before the jury, the following document: "Application and Receipt. $1,600. No. 41-42. Mutual Fire Insurance Association of Arkansas. Camden, Arkansas. We are responsible only for statements made in accordance with our printed literature. It is understood and agreed that the policy is to follow this receipt.

"April 17, 1920.

"GREETINGS:

"I hereby make application for insurance in said Mutual Fire Insurance Association of Arkansas, for which I agree to pay premium $35.80, thirty-five and 80/100 dollars. It is further agreed that in case the said Mutual Fire Insurance Association of Arkansas fails to comply with all laws governing the organization of such fire insurance within twelve months from date, I am to receive back the money I pay for such insurance.

"Cash value of building $1,500; premium $35.

"Cash value of H. H. Goods $900; due $3.40.

"Cash value of stock———. Agent, C. W. Williams.

"Received of Mary G. Jackson, City of Brinkley, Street or Box No.——

"State of Arkansas.

"T. S. Sandefur                         Georgia E. Bowie"
  "President                                 Secretary."

On the back of the receipt was the following: "Application and Receipt, Mutual Fire Insurance Association of

Camden, Arkansas, to Mary Gaines Jackson, amount of receipt $22.40, amount of premium $35.80, value of insured items $1,600; location Brinkley, Arkansas; premium due $13.40; Agent, C. W. Williams, address, Camden, Arkansas. It is understood and agreed that policy is to follow in twelve months or that money paid will be refunded."

Appellant alleged that the appellee was a mutual fire insurance association of Arkansas organized under the laws of the State, and that she had paid the premium mentioned in the above receipt and that her household goods were insured by the appellee in the sum of $900, and that by virtue thereof she was entitled to and had insurance on her household goods, in the sum of $900, which goods were destroyed by fire on December 20, 1920, to the value of $685, for which she prayed judgment.

The answer of the appellee admitted that it was a mutual fire insurance association duly organized under Act No. 652 of the Acts of 1919, approved April 3, 1919. The answer denied all other material allegations of the complaint and denied liability. The facts are substantially as follows:

The appellee was organized as a mutual fire insurance association and was licensed as such by the Insurance Commissioner to do business in the State of Arkansas on the 11th of May, 1921. See secs. 6019 to 6036, C. & M. Digest, inclusive. On April 17, 1920, one C. W. Williams, representing those who duly incorporated the appellee under the above act, solicited and obtained from the appellant her application for insurance and issued to her the document styled Exhibit "A" to the complaint, as above set forth. On December 20, 1920, household goods covered by the above document were destroyed by fire to the value of $685. The appellant testified identifying the application and receipt as above set forth, and stated that she had paid the amount of the premium named therein, and she identified and introduced certain letters, written after the fire but before the appellee was

licensed to do business in this State, signed by the president of the appellee relating to her claim for the loss which she had sustained. In one of these letters the president of the appellee acknowledged the receipt of $3 sent by the appellant to the appellee, and in another of these letters, among other things, he stated: "You need not fear anything, for we are just as sure to see after you as we live to satisfy the State, and we will have some one of our officers to come up there just as soon as I return home from Little Rock."

The appellant further testified that Mr. Sandefur, the president of the appellee, stated to her the latter part of May that he would settle with her in a few days. He stated they had not sent the policy, but that he would fix up the policy and everything would be all right in a few days. On June 29, 1921, after Sandefur had seen witness, they wrote her a letter and sent her back the amount of the premium. That letter was as follows:

"June 29, 1921.

"Mrs. Mary G. Jackson,

"Brinkley, Arkansas.

"Dear Madam: Please find inclosed check for $35.80, the amount of premium you paid this company. We hope this will be satisfactory to you.

"Very truly,

"I. A. CLARK, Treasurer."

The cause was by consent of parties submitted to the court sitting as a jury, and the court found that the application for insurance was taken in April, 1920; that the property was destroyed in December, 1920, and that the license authorizing the appellee to do business was granted on the 11th day of May, 1921. The court declared the law to be that under the above facts the appellant was not entitled to recover, and entered a judgment in favor of the appellee, from which is this appeal.

Sections 6019, 6020, 6021 and 6022, C. & M. Digest, provide for the organization or incorporation of mutual insurance companies. Those sections show that, after

these companies are incorporated and the articles of incorporation are submitted to and approved by the Insurance Commissioner, he shall issue to them a certificate which constitutes their authority "to begin business."

Section 6023, C. & M. Digest, reads as follows: "The company shall have legal existence from and after the date of such certificate of incorporation. The board of directors named in such articles may thereupon adopt by-laws, accept applications for insurance, and proceed to transact the business of such company; provided, that no insurance shall be put into force until the company has been licensed to transact insurance as provided by this act. Such by-laws and any amendments thereto shall within thirty days after adoption be filed with said commissioner."

Section 6025, C. & M. Digest, provides in part as follows: "No such company shall issue policies or transact any business of insurance unless it shall hold a license from the Commissioner authorizing the transaction of such business, which license shall not be issued until and unless the company shall comply with the following conditions: (a) It shall hold *bona fide* applications for insurance upon which it shall issue simultaneously, or it shall have in force, at least twenty policies to at least twenty members for the same kind of insurance upon not less than two hundred separate risks, each within the maximum single risk described herein. * * * (c) It shall have collected a premium upon each application, which premium shall be held in cash or securities in which insurance companies are authorized to invest, and shall be equal, in case of fire insurance, to not less than twice the maximum single risk assumed subject to one fire not less than ten thousand dollars," etc.

Reading all these sections together, it is obvious that after the organization or incorporation, the companies so incorporated have their legal existence from the date of the certificate of incorporation, and they have authority to begin the business of soliciting applications for in-

surance from the date that the insurance commissioner issues his certificate showing his approval of the articles of incorporation. But such companies have no authority to enter into binding contracts of insurance until the commissioner has licensed them to transact an insurance business. The provisions of secs. 6023 and 6025 in express terms prohibit the issuing of policies or putting into force insurance prior to that time. The appellant contends that it was the intention of the Legislature to authorize the companies to enter into binding contracts of insurance from the date when the applications were received and the premiums collected; that any other construction would enable these companies to perpetrate a fraud upon those applying for insurance by enabling the companies to accept the premiums in advance of a binding and completed contract of insurance.

The act is vague and incomplete in not defining the kind of business that the insurance companies are authorized to begin after their incorporation and after the Insurance Commissioner has approved their articles of incorporation; but, as we have said, when we construe the sections together, that is, sections 6023 and 6025, it is manifest that the purpose of the lawmakers was to allow the companies, after the Commissioner approved their articles of incorporation, to begin to solicit applications for insurance and the collection of premiums preliminary to, and as the basis upon which, the Commissioner is authorized to license them to transact business; that is, to enter into binding contracts of insurance. It is certainly true that this act of April 3, 1919, does not afford applicants for insurance who have paid advance premiums any protection in the way of a binding contract of insurance before the companies are licensed by the Commissioner to transact the insurance business and to issue binding policies of insurance. Nor does it afford them adequate protection by requiring such mutual insurance corporation to refund the premiums paid with interest, etc., in the event they are not licensed by the Commissioner to trans-

act an insurance business or issue policies of insurance.
But it is not the province of the court to *piece out* defects
in the law in these particulars. This is peculiarly a legis-
lative and not a judicial function. We may say, in pass-
ing, that the Legislature of 1921 recognized the defect in
the law in not guaranteeing to the applicant for insurance
who had paid advance premiums the return of such
premiums, and attempted to afford them adequate pro-
tection in this respect by amendment of sec. 6020, C. &
M. Digest. Act 493 of March 5, 1921, now requires that
the incorporators of mutual insurance companies shall
file with the Insurance Commissioner a qualified bond in
the sum of $15,000 conditioned for the prompt return to
members of all premiums collected in advance, if the
organization of the company is not completed within one
year from the date of the certificate of incorporation.

The facts show that the premium paid by the appel-
lant in advance was returned to her by the appellee before
the institution of this action. That is all she was entitled
to under the document designated "application and re-
ceipt" upon which she predicates her right of action.
This document is at most but an executory contract by
which the appellee, after the 11th of May, 1921, might
have been bound to issue its policy of insurance if, in the
meantime, the household goods, the subject-matter of the
insurance contract, had not been destroyed by fire. But
before the contract could be executed by the appellee
under the the law and before it was authorized to enter
into a completed contract of insurance under the law, the
property which was the subject-matter of the insurance
was destroyed by fire, thus rendering the execution and
completion of the contract for insurance impossible.
Since the appellant had no binding contract of insurance
with the appellee at the time of the destruction of her
household goods by fire, the court was correct in holding
that the appellant was not entitled to recover. It follows
also that, since there was no contract between the appel-
lant and the appellee whereby appellee had insured appel-

lant's property before the same was destroyed by fire, the conduct and the letters of the president of the appellee, admitting or recognizing appellant's claim, under the policy, could not create a contract which the appellee was not authorized under the law to make.

Learned counsel for appellant relies upon a line of authorities which hold that "a contract made by the promoters of a corporation before it was formed becomes the contract of the corporation, so that it is both entitled to the benefits thereof and liable thereon, if it expressly or impliedly ratifies and adopts the same as its own, or, in most jurisdictions, ratifies it, after it comes into existence, provided it is a contract which the corporation has the power under its charter to make." 14 C. J. 257; 7 R. C. L. 559; *L. R. & Ft. Smith Ry. Co.* v. *Terry,* 37 Ark. 164; *Bloom* v. *Home Ins. Co.* 91 Ark. 367; *Jones* v. *Dodge,* 97 Ark. 248. But these authorities, as we construe the act of April 3, 1919, under which the appellee was incorporated, have no application, for the reason that the liability of the appellee must be predicated upon a contract which it was authorized to make under that act. The undisputed facts of this record show that under that act, at the time of the destruction of appellant's property by fire, there was no completed and binding contract of insurance whereby the appellee had become liable to appellant for the loss of such property.

The judgment of the trial court is in all things correct, and it is affirmed.