SOUTHERN SURETY COMPANY *v.* PHILLIPS.

Opinion delivered February 17, 1930.

*Buzbee, Pugh & Harrison, L. P. Biggs* and *D. M. Halbert,* for appellants.

*D. D. Glover, Joe McCoy* and *W. H. Glover,* for appellees.

MEHAFFY, J. R. O. Gwin entered into a contract with the Arkansas State Highway Commission on the 17th day of October, 1927, for the construction of a road in Hot Springs County, Arkansas, known as State Job No. 621.

The Southern Surety Company executed a bond to the Highway Commission for the faithful performance of said contract. The evidence does not show how much of the construction work was done nor how much money had been earned or paid to the contractor, nor how much was due him at the time the surety company took charge of the work. But on February 12, 1929, the contractor, R. O. Gwin, executed the following instrument:

"Whereas, the undersigned, R. O. Gwin, entered into a contract with the State Highway Commission of the State of Arkansas, on the 17th day of October, 1927, for the construction, grading and drainage structures on the Dallas County Line-Malvern Road, State Highway No. 9 S-4, State Job No. 621, Hot Spring County, and

"Whereas, the undersigned executed a bond to the State Highway Commission for the faithful performance of said contract on which bond the Southern Surety Company became surety; and,

"Whereas, the Southern Surety Company of New York has succeeded to all of the rights and liabilities of said Southern Surety Company under said bond; and,

"Whereas, by virtue of an arrangement made by the undersigned with M. W. Elkins, of Little Rock, Arkansas, the said M. W. Elkins has furnished a large sum of money which has been used in constructing said highway for the benefit of the undersigned, and it has finally become nec-

essary for said M. W. Elkins and said Southern Surety Company of New York to assume the liabilities of the undersigned under said contract, and to collect from the State Highway Department the amounts due said Highway Department under the terms of said contract.

"Now, therefore, in consideration of the premises, I hereby assign to the said M. W. Elkins all my right, title and interest in and to any sum of money which may be due me by the said Highway Department under the terms of said contract, subject, however, to the rights and interests of Southern Surety Company of New York, therein, and the said Southern Surety Company of New York is hereby authorized and directed to pay out of moneys received from the State Highway Department under said contract; first, all lawful claims growing out of the performance of said work; second, all amounts which may be due to it, and, third, the remainder, if any, to the said M. W. Elkins, but not to pay the said Elkins any more than I owe the said Elkins, and the remainder to be returned to R. O. Gwin.

"Witness my hand this 12th day of February, 1929.

"R. O. Gwin (Signed)

"Witness: L. P. Biggs (Signed)."

Appellants state in their brief that a great many suits were brought against the contractor and the surety by laborers, materialmen and subcontractors. Something like thirty or forty different persons brought suits in the justice court and in the circuit court of Hot Spring County.

The evidence, however, does not show any suits except these. Some of these suits were brought in the latter part of 1928 and some in January, 1929. Those brought in justice court were appealed to the circuit court by the surety company and were consolidated under the following agreement:

"It is agreed by and between the attorneys for the plaintiffs and the attorney for the defendant, Southern Surety Company, in the above entitled cases, that the

said cases may be consolidated and proceed as one case hereinafter under the style of E. T. Phillips and others v. R. O. Gwin and Southern Surety Company. It is agreed that the statements of account set out in each of the complaints, and/or exhibits thereto in each of said cases, is true and correct, and was furnished as therein alleged.''

The parties waived a jury, and, by agreement of parties, the cases were tried by the court sitting as a jury, and the court found for the appellees. The court found that the appellant, Southern Surety Company, was not liable to plaintiffs on the bond of the contractor to the Highway Commission, but found against the appellants on the agreement entered into on the 12th day of February, 1929. The judgment of the court in favor of appellants on the bond was not appealed from; hence the only question for our consideration is whether or not the appellants are liable on the instrument executed on the 12th day of February, 1929.

Counsel for appellants state in their brief that the surety company might, under its original assignment, have appropriated the fund received from the highway department, and used the same as far as it went in paying obligations which were recoverable against the surety. This being true, there was no occasion or reason for the assignment made by Gwin except to pay all lawful claims growing out of the performance of the contract. But whether they could have paid these obligations and appropriated the money or not is immaterial, because they are either liable under the instrument of February 12 or they are not liable at all. It is contended that this is not a contract but merely an order, draft, direction or agreement by Gwin.

A contract is an agreement which creates an obligation. There must be competent parties, a subject-matter, a legal consideration, mutuality of agreement and mutuality of obligation. Agreement is the expression by two or more persons of a common intention to affect their

legal relations. It consists in their being of the same mind and intention concerning the matter agreed on. The instrument of February 12 was an assignment and an offer, and, until accepted, it was not binding. An acceptance, however, may be by an act of the party as it was in this case.

Mr. L. P. Biggs testified in this case about the contract entered into between Gwin and the State Highway Commission, and the surety bond and assignment set out above, and then said: "The Southern Surety Company of New York and M. W. Elkins demanded of and received from the State Highway Department all of the money due said Gwin by the Highway Department on the aforesaid contract for construction, and that this was done after making and signing the paper attached to his deposition."

This was the assignment of Gwin. In other words, when the assignment was made, the surety company and Elkins then, under the terms and provisions of the assignment, received all of the money that the Highway Department owed Gwin. The acceptance of the offer made by Gwin constituted a contract. But it is said that the appellees have no right of action arising out of the instrument signed by the contractor, but that it is merely an order, draft or direction, and then cite and rely on the case of *Rogers Commission Co.* v. *Farmers Bank,* 100 Ark. 537, 140 S. W. 992. The court in that case said, however:

"It was not necessary to the bank's liability that it should have on deposit to the drawers' credit more than the amount of this check at the time of its presentation, for it would have become liable to its payment by an acceptance of it, and could have permitted an overdraft as it has usually done, or withheld its own check which it claimed to have in its drawer against the account of the makers of the check which latter the testimony indicates it did do."

It will therefore be seen that the case relied on holds that if the offer is accepted it constitutes a contract and the bank would have to pay.

Appellant next calls attention to the case of *Sims* v. *American National Bank of Fort Smith*, 98 Ark. 1, 135 S. W. 356. That was a case where the indorsement on the check was forged. And, while it was paid, the court held that there was never an acceptance, and the payee of a check cannot maintain an action upon it against the bank on which it is drawn until it is accepted. But, when accepted, it constitutes a contract upon which the suit may be maintained.

In the next case cited and relied on by appellant, *Exchange Bank & Trust Co.* v. *Ark. Grocer Co.*, 169 Ark. 1084, 277 S. W. 871, the court, among other things, said:

"If there was an acceptance of the order by the garnishee, its character, by that act, was changed from a simple order to an assignment. * * * It occurs to us that this act of the association in receiving and filing the order was tantamount to saying to Bueker, the drawer of the order: 'We acknowledge receipt of your order, accept the same, and will pay the money to the Exchange Bank & Trust Company as you direct.'"

So, in the instant case, when the surety company and Elkins, after the assignment or instrument signed by Gwin had been delivered to them, collected all the money due the contractor, it amounted to saying: "We acknowledge the receipt of your order and accept the same, and will pay the money due you to the persons holding lawful claims growing out of the performance of your work."

The next case relied on by appellant is *Southern Trust Co.* v. *American Bank of Commerce & Trust Co.*, 148 Ark. 283, 229 S. W. 1026, 14 A. L. R. 761. In that case the court said that the check would not operate as an assignment of the funds so as to empower Smith to sue for the amount, and that it had become the settled doctrine of this court that the payee of an unaccepted check cannot maintain an action upon it against the bank on which it is drawn, and that the unauthorized payment by the bank on a forged endorsement does not constitute an

acceptance. It is also the settled doctrine of this court that, if there has been an acceptance, then the payee can maintain an action against the bank.

It is next contended by the appellants that the plaintiffs cannot sue on this contract. Our statute provides: "Every action must be prosecuted in the name of the real party in interest except as provided in §§ 1091, 1092 and 1094." And appellants state what they call the essentials of a contract made for the benefit of a third person to enable the third person to maintain the suit, and they quote as follows:

"One may maintain an action upon a promise made to another for his benefit if such promise was founded on a consideration, and especially where the promisor received property and in consideration thereof agreed to discharge the debt of another." Citing *Spear Mining Co. v. Shinn*, 93 Ark. 346, 124 S. W. 1045; *Hecht v. Caughron*, 46 Ark. 132; *Bloom v. Home Insurance Agency*, 91 Ark. 367, 121 S. W. 293; *Chamblee v. McKenzie*, 31 Ark. 155; *Talbot v. Wilkins*, 31 Ark. 155; *Thomas Mfg. Co. v. Prather*, 65 Ark. 27, 44 S. W. 218.

All of these cases support the theory that one may maintain an action upon a promise made to another for his benefit, but it is argued that the instrument is not a promise, agreement, contract or obligation made by appellants to pay anything or do anything, but a mere written consent of the contractor. That was true until accepted by the appellants, but when they acted on the promise of Gwin and accepted the money, that instrument named the persons for whose benefit the contract was made. And the promise of Gwin, as it is called, provided that appellant should pay all of the debts of Gwin growing out of the work on the road.

There is no evidence showing how much they received, but the appellants themselves state that it became necessary for the Southern Surety Company to finance the job to completion with funds furnished by M. W. Elkins, who was already a large creditor of the con-

tractor and who hoped to recoup a part of his loss by completing the project. In other words, appellants state that they expected to make a profit by taking over the road. The only evidence in the case that Elkins furnished any money at all is in the assignment signed by Gwin in which it is stated, among other things, that Elkins furnished a large sum of money which has been used in the construction of the highway for the benefit of Gwin, and the only evidence in the record that Gwin could not complete the contract is the statement in the same instrument that it has finally become necessary for said Elkins and said Southern Surety Company of New York to assume the liabilities of the undersigned under said contract, and to collect from the State Highway Department the amounts due said highway department under the terms of said contract. How much was due from the highway department is not shown, as we have already said, and how much of the work was done. In fact, there is no evidence tending to show what profit the appellants made out of taking over the contract, but, according to their own statement, they took it over expecting to make a profit.

Appellant argues that there was in the minds of the parties when the instrument was written only an intent to have the contractor confirm the payments theretofore made and thereafter to be made for his account. They say that when the instrument was signed there was around the table subcontractors awaiting for the payment of the amount agreed on. This may be true, but there is no evidence in the record tending to show this to be true.

It is also argued that there was not in the minds of any one who had any interest in the matter any idea or intent to create a promise on the part of appellants to pay all Gwin's lawful claims. There is no evidence on this question except the instrument itself, and it specifically provides for the payment of all lawful claims growing out of the performance of said work. The agreement

entered into by the attorneys shows that the account of each appellee is correct, and that the purpose for which they were furnished was correctly stated. And each account states, in substance, that the material was furnished to be used in the construction of the road. Now the agreement is that the account is correct, and that it was for material furnished to be used in the construction of the road.

Appellants call attention to the case of *Spear Mining Co.* v. *Shinn,* 93 Ark. 346, 124 S. W. 1045. In that case the court said, among other things:

"The weight of modern authority holds that one may maintain an action on a promise made to another for his benefit, if such promise is founded upon consideration." 3 Page on Contracts, § 1307; *Hendrick* v. *Kindsay,* 93 U. S. 143.

"And especially is this true where the one who makes the promise receives property, and in consideration thereof agrees to discharge a debt in favor of another. * * * And so one corporation may become liable for the debts of another corporation, where it has in express terms or by reasonable implication assumed the payment of the liabilities of the debtor corporation."

Appellants then cite *Bloom* v. *Home Insurance Co.,* 91 Ark. 367, 121 S. W. 293, and say that that case is not of great assistance in the case. In that case the court said:

"By § 5999 of Kirby's Digest, it is provided that every action must be prosecuted in the name of the real party in interest, with certain exceptions which do not apply here. The beneficial owner is the real party in interest within the meaning of this provision of the code. 30 Cyc. 45. Where a contract is entered into for the benefit of a third person, the latter is the real party in interest; and a majority of the American courts have adopted the rule that such person may maintain an action for the violation of the contract."

Appellants next calls attention to the case of *Georgia State Savings Assn.* v. *Dearing*, 128 Ark. 149, 193 S. W. 512, and quote as follows: "A person for whose benefit a contract is made, but incurring no obligation himself, cannot sue upon the contract." In that case the court also said: "The rule in this State is that a stranger to a contract between others in which one of the parties promises to do something for the benefit of such stranger, there being nothing but the promise (no consideration from the stranger, and no duty or obligation to him on the part of the promisee), cannot recover thereon."

But in this case there was a duty; there was a consideration. These persons had furnished material to go into the construction of the road. There was money in the highway department due the contractor for this work, how much we do not know, and these persons had furnished the material, and Gwin was indebted to them and promised to pay that debt, and the other parties, the appellants, in accepting that contract, thereby promised to pay these parties.

In the next case referred to by appellants, *Thomas Mfg. Co.* v. *Prather*, 65 Ark. 27, 44 S. W. 218, the court said:

"This court long ago ruled, in line with the doctrine which generally obtains in this country, that where a promise is made to one upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor for a breach of his promise. * * * Of course, the name of the person to be benefited by the contract need not be given, if he is otherwise sufficiently described or designated. Indeed he may be one of a class of persons, if the class is sufficiently described or designated."

The next case referred to and relied on by appellants is *Schmidt* v. *Griffith*, 144 Ark. 8, 221 S. W. 746. The court in that case said:

"There are many decisions of this court announcing the familiar rule that, where a promise is made to one

party upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor on his promise.''

Appellants say that, if the contractor had turned over his home to the surety, and, in consideration of the transfer, the surety had promised to pay all the contractor's debts, then appellees might sustain the complaint. If they could, we see no reason why the same rule does not apply in turning over other property. In this case the contractor owed the appellees. The materials furnished by them were used in the construction of the road, and the amounts sued for are correct. The contractor turned over to the appellants all the moneys due him from the highway commission, and the appellants, by accepting the assignment, agreed to pay all lawful claims growing out of the performance of the work. These claims come within that class.

The judgment of the circuit court is correct, and is therefore affirmed.