MADISON BANK AND TRUST et al *v.*
FIRST NATIONAL BANK OF HUNTSVILLE,
Arkansas et al

81-267                                   635 S.W.2d 268

Supreme Court of Arkansas
Opinion delivered June 28, 1982

*Rose Law Firm,* by: *Vincent Foster, Jr.,* for appellant.

*Friday, Eldredge & Clark,* by: *Robert K. Walsh,* for appellees.

FRANK HOLT, Justice. In October, 1980, following approximately one year of negotiations, the appellants purchased substantially all of the outstanding shares of the Bank of Kingston, a state bank, now named Madison Bank and Trust. The buyer under the agreement was James E. McDougal, Agent. The sellers, the Hargis family trust and members of the Bunch family, were also the majority shareholders in the only other bank in Madison County, the appellee First National Bank of Huntsville. The purchase agreement provided for a cash purchase price which exceeded $500,000, plus a restrictive covenant. The contract provides in pertinent part:

> WHEREAS, as an inducement to each of the SHARE-HOLDERS to enter into this Agreement for the Sale

and Purchase of Bank Stock, the BANK has agreed that during the ensuing ten (10) year period it will not move its main office or establish a branch bank or a teller's window in the Cities of Huntsville and Hindsville, the Town or Community of Marble, Madison County, Arkansas, and otherwise within a ten (10) highway mile radius of Huntsville, Madison County, Arkansas . . . .

Thereafter, paragraph 7 (b) provides:

As a part of the consideration to each of the SHARE-HOLDERS and the essence of this Agreement for the Sale and Purchase of Bank Stock is the agreement of the BANK and the BUYER that the BANK shall not within a period of ten (10) years after this date establish its main office, or a branch office or a teller's window in the Cities of Huntsville and Hindsville, and the Town or Community of Marble, Madison County, Arkansas, and within a ten (10) highway mile radius of Huntsville, Arkansas . . . .

About three months after the purchase or in the early part of 1981, the Board of Directors of the Bank of Kingston changed the name to Madison Bank and Trust and shortly thereafter initiated applications to the State Bank Department and the Federal Deposit Insurance Corporation (FDIC) for authority to amend its charter to permit moving its main office from Kingston to Huntsville and establish a full service branch at Kingston. After an investigation by the Bank Department staff and before the application was heard, the appellee bank and two of the sellers filed this action seeking specific performance of paragraph 7 (b) of the agreement and an injunction against the appellants to prohibit them from proceeding with their application or acting contrary to the provisions of paragraph 7 (b) in the purchase agreement. In response the appellants contended that the restrictive covenant was void and unenforceable under state law and violated antitrust laws. Following a hearing the trial court ordered specific performance of the agreement and granted the injunction.

The court found that the agreement was freely and voluntarily entered into by the parties on equal footing; that McDougal was expressly acting as agent for certain named appellants with the remaining appellants committed to be buyers at the time of closing; that the individual appellants knew of Paragraph 7 (b) by the time of the closing; that the individual appellants as shareholders and directors of the Bank of Kingston ratified the purchase agreement; that the application to move the bank from Kingston to Huntsville would be in direct violation of Paragraph 7 (b) of the agreement; that it was the intent of the parties that the Bank of Kingston be bound thereby and the National Bank of Huntsville be a third party beneficiary to the contract; that paragraph 7 (b) serves a legitimate purpose by protecting the residents of Kingston by limiting the ability of the bank to move its assets from that community and its people; that paragraph 7 (b) was an essential part of the consideration for the sale or transfer of stock and sale and transfer of the bank would not have occurred without paragraph 7 (b); that paragraph 7 (b) is not in violation of the Sherman Act since appellants are not prohibited from commencing a new bank or engaging in the business of banking in Huntsville or from otherwise competing for customers with any other financial institution; that paragraph 7 (b) is a limited restraint, reasonable in scope, duration, and geographical extent; that the agreement is enforceable and binding on the individual appellants and the Bank of Kingston now Madison Bank and Trust. Hence this appeal.

Appellants first contend that the trial court erred in finding paragraph 7 (b) of the agreement has a legitimate, protectable purpose and is reasonable in scope and geographic exent. The general rule is that a contract in restraint of trade ancillary to a sale or a business transaction, which is reasonably limited as to time and place, is not against public policy and is not invalid. See *Bloom* v. *Home Insurance Agency,* 91 Ark. 367, 121 S.W. 293 (1909); *Webster* v. *Williams,* 62 Ark. 101, 34 S.W. 537 (1896); *United States* v. *Empire Gas Corp.,* 537 F.2d 296 (8th Cir. 1976), cert. den. 429 U.S. 1122 (1976); 17 C.J.S. Contracts § 238, p. 1107; 54 Am. Jur. 2d, Monopolies, Etc., § 103.

There are two types of these contracts — one, the employer/employee and two, the sale or transaction involving an established business. The courts view a restraint of trade agreement ancillary to the transfer of a business with greater liberality, being "more prone to uphold restrictive clauses" than employer/employee covenants. *McLeod* v. *Meyer*, 237 Ark. 173, 372 S.W.2d 220 (1963); see also 42 Am. Jur. 2d, Injunctions, § 115; and 54 Am. Jur. 2d, Monopolies, Etc., § 543. In *Little Rock Towel and Linen Supply Co.* v. *Independent Linen Service Co. of Ark.*, 237 Ark. 877, 377 S.W.2d 34 (1964), we said: "Owing to the possibility that a person may be deprived of his livelihood the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale." Whether a restraint provision is reasonable or unreasonable is a question to be determined under the facts of each case. *McLeod* v. *Meyer, supra.* The burden is on the party challenging the validity of the covenant to show it is unreasonable and against public policy. See *United States* v. *Empire Gas Corp., supra.* The trial court's findings will not be reversed unless clearly erroneous. *Ford Motor Credit* v. *Yarbrough,* 266 Ark. 457, 587 S.W.2d 68 (1979); A.R.C.P. Rule 52 (a), Ark. Stat. Ann. Vol. 3A (Repl. 1979).

McDougal began negotiations to purchase the Bank of Kingston from the appellees in the summer of 1979. An offer to purchase was tendered to an officer and shareholder of the bank. The offer was not acted upon by appellees and in early 1980, because of a "no progress" report, McDougal told the officer and part owner that he had decided to forget the deal. In April, 1980, this bank official contacted McDougal and said that he and the other owners of the bank wanted to sell. Negotiations were resumed. One shareholder was a nonresident. By letter addressed to him dated April 21, 1980, McDougal offered $1,500 cash per share for his stock and to sign an agreement not to move the bank to Huntsville during the next ten years. Considerable discussion ensued with appellees. However, McDougal withdrew his offer by letter dated July 25, 1980. In August, appellees' attorney contacted McDougal and informed him he could close a deal on the bank. On August 21, 1980, McDougal signed an agreement to purchase the bank stock as "James B.

McDougal, Agent." McDougal stated he signed as agent to make the sellers aware they could be expected to deliver the shares to persons other than himself. He knew about the restrictive covenant before he signed the agreement. There was conflicting testimony as to whether he or the sellers initiated the idea for the restriction. It appears that the other parties who purchased the stock knew of the existence of paragraph 7 (b) before the October closing. It was stipulated that each stock certificate issued to appellants was endorsed, stating it was subject to the provisions of paragraph 7 (b) of the agreement. In April, 1981, the Board of Directors of the appellant bank voted to amend its charter and make application to the State Bank Department to move its main office to Huntsville. In June, 1981, the Board of Directors rescinded the agreement or consent not to move its office to Huntsville on the basis that paragraph 7 (b) was invalid and unenforceble.

The contract clearly provides and the testimony indicates, as the court found, that paragraph 7 (b) was an essential part of the consideration for the sale, and the transaction would not have occurred but for appellants' covenant in paragraph 7 (b). Appellees' expert witness testified that the purpose of such a restriction was to make transfers such as this possible. In *United States* v. *Addyston Pipe and Steel Co.*, 85 F. 271 (8th Cir. 1898), aff'd 175 U.S. 211, 44 L. Ed. 136, 20 S. Ct. 96, the court said with respect to a buyer-seller covenant:

> Again, when one in business sold property with which the buyer might set up a rival business, it was certainly reasonable that the seller should be able to restrain the buyer from doing him an injury which, but for the sale, the buyer would be unable to inflict. This was not reducing competition, but was only securing the seller against an increase of competition of his own creating. Such an exception was necessary to promote the free purchase and sale of property.

See also 14 Williston on Contracts, 3d, § 1637 (1972) and 54 Am. Jur. 2d, § 528. Here, we cannot say that the chancellor's finding that paragraph 7 (b) had a legitimate and protect-

able purpose is clearly erroneous, nor that its sole object, as argued by appellants, is to prevent competition and is too broad with respect to the public interest.

We also feel the chancellor's finding that the restriction was reasonable in scope, geographic extent and duration was supported by the evidence. The general rule is that, in order to be reasonable, the territory included in the covenant must be necessary for the protection of the promisee's interest. 46 A.L.R. § 5 [e], p. 149 (Enforceability of covenant against competition, ancillary to sale or other transfer of business, practice, or property, as affected by territorial extent of restriction). The annotation, § 181, p. 363, shows the overwhelming majority of jurisdictions uphold a ten mile restriction ancillary to a sale or transaction involving a business as being reasonable in territorial extent. Similarly, a duration of ten years is also upheld as being reasonable. See 45 A.L.R.2d § 158, p. 238. See also *Robins* v. *Plant,* 174 Ark. 639, 297 S.W. 1027 (1927). Further, good will is not a necessary element in this transaction. *Colby* v. *McLaughlin,* 210 P.2d 527 (Wash. 1957).

Appellants next argue that enforcement of paragraph 7 (b) is injurious to the citizens of Madison County. The investigation by the State Bank Department staff revealed that another bank in Huntsville would stimulate growth and create new jobs. It would benefit the local economy and not have an adverse impact on competing banks. The First National Bank of Huntsville presently does not provide many of the banking services which the appellants propose to bring to Huntsville. Appellants assert that the restraint, if enforced, would deprive the public of its services until the ten year period terminates. We cannot agree. Appellants are not prohibited from servicing customers or engaging in the banking business within the ten mile radius. It appears they are doing so, although it would be more convenient for all concerned if they had their main office in Huntsville. Furthermore, there is nothing to prevent the appellants from applying to the State Bank Department for a new charter in order to establish a new bank in Huntsville if the Department deems its findings so justify. In doing so, it can consider and assure the fulfillment of the need for a banking

facility in Kingston. Ark. Stat. Ann. § 67-205 (Repl. 1980). Further, the action here is based upon an alleged breach of contract.

Appellants next contend paragraph 7 (b) constitutes a horizontal division of markets and of customers in violation of the Sherman Act. We cannot agree. In *Syntex Laboratories, Inc.* v. *Norwich Pharmacal Co.,* 315 F. Supp. 45 (S.D.N.Y. 1970), aff'd 437 F.2d 566 (2nd Cir. 1971), the court stated at p. 56:

> It is hornbook law that a covenant not to compete ancillary to the sale of a business (or a part of a business), when reasonably limited as to time and territory, does not fall within the prohibition of the Sherman Act.

See also *Goldberg* v. *Tri-States Theatre Corporation,* 126 F.2d 28 (8th Cir. 1942). Further, it is apparent that presently the appellants are vigorously competing with the appellees for customers. Also, the appellants, as previously stated, are not prohibited from applying for a charter to establish a new bank in Huntsville.

Appellants insist that paragraph 7 (b) is unenforceable against Madison Bank and Trust, as the officer, the president who signed the agreement on behalf of the Kingston Bank was acting outside the scope of his authority and there was no consideration. The chancellor correctly found, as the contract provided, that it was the intent of the parties that the Bank of Kingston (now Madison Bank and Trust) and each of the individual appellants as shareholders and members of the Board of Directors be bound by the agreement and by the provisions of paragraph 7 (b); further, the individual appellants as shareholders and directors ratified the agreement and paragraph 7 (b) of the agreement was an essential part of the consideration of the sale or transfer of the stock. The Bank of Kingston, as a legal entity, can only act through its agents, and the acts of its corporate officers are regarded as its acts. *Kull* v. *Dierks Lumber & Coal Co.,* 173 Ark. 445, 292 S.W. 695 (1927).

Appellants finally assert that the court erred in enjoining the individual appellants from exercising their discretion as bank directors. We find no merit in this contention. The agreement is binding upon the appellants as individuals and directors, as the court held, and they cannot be allowed to act contrary to paragraph 7 (b). See *Bloom* v. *Home Insurance Agency, supra.*

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I find the duration of ten years is unreasonable. The cotton gin case of *Robins* v. *Plant,* 174 Ark. 639, 297 S.W. 1027 (1927), used by the majority, is, in my judgment, somewhat out of date in today's commercial market. Ten years is simply too long to restrict any kind of trade.

There is no doubt that the community of Madison County will suffer unless the appellees receive fair competition and that is essentially what the appellees propose to prevent. I expect the majority may be deeply influenced in its judgment by the fact that the appellants were knowledgeable, well informed businessmen who should have known what they were signing when they made and entered into the written agreement, and should not readily be able to break it. But to me that is a moral and not a legal consideration. The appellants cannot be bound by such an agreement in a court of law because the contract is an unreasonable restraint on trade. We cannot make it reasonable in time because to do so would be to draw a new contract for the parties, which we do not have the power to do. *Rector-Phillips-Morse, Inc.* v. *Vroman,* 253 Ark. 750, 489 S.W.2d 1 (1973). Therefore, I would declare it void.

JOHN I. PURTLE, Justice, dissenting. In my opinion, the Arkansas General Assembly has, through Ark. Stat. Ann. § 67-205 (Repl. 1980), delegated to the State Bank Commissioner and the State Banking Board the authority to approve or disapprove the creation and transfer of banks and their branches. The statute reads in part:

All applications for charters for the new banks and for approval of amendments of the charters of existing banks shall, immediately upon their filing with the State Bank Commissioner, be submitted to the board for investigation and for approval or disapproval by it. The board shall, immediately upon the submission to it of each application for a charter or each certificate of amendment of a charter make such investigation as shall enable it to determine the fitness of the applicants, the need, from the public standpoint, for the proposed institution or the change to be effected by the proposed charter amendment and all other questions, whether or not of like kind with those herein referred to, bearing directly or indirectly upon the need or desirability from the public standpoint of the proposed institution or charter amendment, and shall then without delay approve or disapprove the application . . . No bank or trust company shall change or remove the location of its banking house, office or place of business from one [1] town or city to another save by charter amendment first approved by the Bank Commissioner and the State Banking Board in the manner herein required in respect of charter amendments generally.

Only the State Banking Board has the authority to determine whether the public needs are met by the establishment of a bank or branch bank in a particular community. In the present case the investigation by the State Banking Board and the commissioner's staff found that it would be beneficial to the local economy to have appellants establish a bank in Huntsville. It was also found that it would not have an adverse impact on the competing bank. The investigation established clearly that the existing bank does not provide many of the banking services which appellants proposed to bring to Huntsville. Therefore, if the existing bank refuses to bring full and adequate services to the people it serves, it is only logical that a competing bank should be allowed to provide these services. The majority opinion agreed that the State Banking Board might well approve the establishment of a new bank charter in Huntsville. According to the above-quoted statute, the board and commissioner

also have the exclusive right to approve or disapprove of a transfer of an existing bank's office to another town.

In my opinion, paragraph 7 (b) of the purchase agreement is unenforceable because it is an attempt to evade provisions of the law as established by the people of the state of Arkansas through the General Assembly in establishing the State Banking Board and the office of Bank Commissioner. It should be noted that the Madison Bank did not include any of its "good will" with the sale of its stock in the Kingston Bank. It seems that the provisions of paragraph 7 (b) were included specifically to stifle competition and promote an existing monopoly. In the case of *Shapard* v. *Lesser*, 127 Ark. 590, 193 S.W. 262 (1917), we held that an agreement to prevent attempts to buy a competitive gin and to stay out of the gin and cotton seed business in competition with an existing corporation was an unenforceable contract. It seems to me that in the great majority of cases where a restraint of personal services or trade has been enforced the grantor has conveyed at least a portion of its good will and services to the purchaser. No such items were purchased by the appellants and none were granted by the appellee bank.

There is no doubt in my mind that the State Banking Board is in a much better position as an administrative agency to determine and resolve the issues of this case than is a chancery court or the supreme court. In the case of *Gordon* v. *Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978), this court recognized that administrative agencies are in a better position to resolve such issues than are the courts. Such agencies are by nature specialists and they have greater experience and insight and are more able to determine and analyze the legal principles and facts involved than we are. The courts should not substitute their opinion for that of state agencies unless there has been an obvious failure to comply with the legal requirements in making such decisions.

For the foregoing reasons, I respectfully dissent.